682 So.2d 1303 (1996)
Wanda RIGDON, Individually and on Behalf of the Estate of William Rigdon and on Behalf of the Minor Child, Billy Joe Rigdon
v.
PITTSBURGH TANK & TOWER COMPANY, INC., and Its Executive Officers, et al.
No. CW 95 2611.
Court of Appeal of Louisiana, First Circuit.
November 8, 1996.
Stephen B. Murray, Charles R. Ward, Murray Law Firm, New Orleans, for Plaintiffs/Respondent, Wanda Ridgon, et al.
Robert E. Peyton, Robert D. Peyton, Christovich & Kearney, New Orleans, for Defendants/Relators, Pittsburgh Tank & Tower Company, Inc., et al.
Before WHIPPLE, PITCHER and FITZSIMMONS, JJ.
*1304 WHIPPLE, Judge.
We granted certiorari in this case to determine whether the trial court properly denied defendants' motion for summary judgment upon concluding that pursuant to LSA-C.C. art. 3543, Louisiana law was applicable to the determination of whether plaintiff's exclusive remedy against defendants was worker's compensation. The trial court concluded that based on Louisiana law, plaintiff could pursue a tort claim against defendants.

FACTS AND PROCEDURAL HISTORY
The decedent, William Rigdon, was employed by defendant, Pittsburgh Tank & Tower Company, Inc. (hereinafter referred to as Pittsburgh), as a welder. Pittsburgh contracted with the City of Ponchatoula to dismantle a water tower. While working ninety feet up on the water tower, the decedent was crushed to death by a falling steel beam which he had cut with a welding torch. Following the accident, Pittsburgh was issued six citations for "serious" OSHA violations.
Plaintiff, Wanda Rigdon, individually and on behalf of the estate of the decedent, William Rigdon, and on behalf of the minor, Billy Joe Rigdon, filed a tort claim against Pittsburgh and its executive officers.[1] The petition sought damages for the wrongful death of the decedent, damages based on a survival action, and punitive and compensatory damages. Defendants, Pittsburgh and William D. Johnson, filed a motion for summary judgment. In the motion, defendants allege that the decedent and all parties (plaintiff and defendants) are domiciled in Kentucky; therefore, pursuant to LSA-C.C. art. 3544, Kentucky law was applicable. According to defendants, under Kentucky law, defendants are immune from tort liability, and plaintiff's exclusive remedy is worker's compensation benefits.[2] In response, plaintiff argued that pursuant to LSA-C.C. art. 3543 Louisiana law is applicable and provides a remedy in tort inasmuch as the petition alleges intentional acts.[3]
By judgment dated October 3, 1995, the trial court denied the motion for summary judgment, concluding that pursuant to LSA-C.C. art. 3543, Louisiana law was applicable, and that based on the allegations contained in plaintiff's petition, Louisiana law authorized a tort claim against the employer. Defendants applied to this court for supervisory writs, and we granted certiorari to consider the correctness of the trial court's ruling, denying summary judgment in defendants' favor.

*1305 SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Kidd v. Logan M. Killen, Inc., 93-1322, p. 4 (La.App. 1st Cir. 5/20/94); 640 So.2d 616, 618. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966;[4]Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 325 (La.1993).
In this case, the material facts are undisputed; namely, that plaintiff, the decedent and the employer were all domiciled in Kentucky at the time of the accident, which occurred in Louisiana. Thus, the sole issue presented to the trial court and for our consideration is whether, based on these undisputed facts, defendants are entitled to judgment as a matter of law.

DISCUSSION
Act No. 923 of 1991, Louisiana's new choice of law provisions, went into effect on January 1, 1992, and applies to all actions filed after that date. This legislation codifies, updates and streamlines Louisiana conflicts of law jurisprudence. Oliver v. Davis, 95-1841, p. 5 (La.App. 1st Cir. 8/12/96); 679 So.2d 462, 465. Book IV of the Louisiana Civil Code is entitled "Conflict of Laws," and begins with LSA-C.C. art. 3515, which provides the general rule for determining the law applicable to cases which have contacts with other states:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
Title VII of Book IV is entitled "Delictual and Quasi-Delictual Obligations," and begins with LSA-C.C. art. 3542, which sets forth the *1306 general choice of law rule pertaining to delictual and quasi-delictual obligations:
Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.
Following LSA-C.C. art. 3542 in Title VII are more specific provisions which, if applicable, will prevail. See Symeon C. Symeonides, Louisiana's New Law of Choice of Law for Tort Conflicts: An Exegesis, 66 Tul. L.Rev. 677, 689 (1992). LSA-C.C. art. 3543 is entitled "Issues of conduct and safety" and provides:
Issues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state or in another state whose law did not provide for a higher standard of conduct.
In all other cases, those issues are governed by the law of the state in which the injury occurred, provided that the person whose conduct caused the injury should have foreseen its occurrence in that state.
The preceding paragraph does not apply to cases in which the conduct that caused the injury occurred in this state and was caused by a person who was domiciled in, or had another significant connection with, this state. These cases are governed by the law of this state.
Relying on the provisions of this article, the trial court concluded that because the injury/death occurred in Louisiana and the wrongful conduct occurred in Louisiana, Louisiana law was applicable. Defendants contend on appeal that this conclusion was erroneous. We agree.
While the merits of plaintiff's claim pertain to issues of conduct and safety, the issue before the trial court on the motion for summary judgment was whether defendants were immune from tort liability.
Louisiana's conflict of laws principles recognize the concept of "depecage," as LSA-C.C. arts. 3515 and 3542 use the term "issue." Under this concept, courts must utilize an issue-by-issue analysis which may result in laws of different states being applied to different issues in the same dispute. See Comment (d) to LSA-C.C. art. 3515. Thus, while the merits of plaintiffs' claim may pertain to issues of conduct and safety, the preliminary issue before the court, namely, whether defendants are immune from tort liability, is an issue of loss distribution and financial protection, governed by LSA-C.C. art. 3544. Comment (a) to LSA-C.C. art. 3543 states that "rules that impose a ceiling on the amount of compensatory damages or provide immunity from suit are `rules of loss-distribution and financial protection.'" We find further support in the cases of Kennington v. H. Blume Johnson, Inc., 25580 (La. App. 2nd Cir. 2/23/94); 632 So.2d 883, rev'd on other grounds, 94-0744 (La.7/1/94); 638 So.2d 1066, and Duhon v. Union Pacific Resources Company, 43 F.3d 1011 (5th Cir. 1995), wherein the Louisiana second circuit court of appeal and the United States fifth circuit respectively concluded that statutes that provide immunity from suit are appropriately classified as rules of loss distribution or financial protection. Accordingly, we agree with defendants that the applicable choice of law provision is contained in LSA-C.C. art. 3544.
However, our inquiry does not end here. LSA-C.C. art. 3544 provides as follows:
Issues pertaining to loss distribution and financial protection are governed, as between a person injured by an offense or quasi-offense and the person who caused the injury, by the law designated in the following order:

*1307 (1) If, at the time of the injury, the injured person and the person who caused the injury were domiciled in the same state, by the law of that state. Persons domiciled in states whose law on the particular issue is substantially identical shall be treated as if domiciled in the same state.
(2) If, at the time of the injury, the injured person and the person who caused the injury were domiciled in different states: (a) when both the injury and the conduct that caused it occurred in one of those states, by the law of that state; and (b) when the injury and the conduct that caused it occurred in different states, by the law of the state in which the injury occurred, provided that (i) the injured person was domiciled in that state, (ii) the person who caused the injury should have foreseen its occurrence in that state, and (iii) the law of that state provided for a higher standard of financial protection for the injured person than did the law of the state in which the injurious conduct occurred.
At first glance, it appears that pursuant to this article, Kentucky law should apply. Defendants argue that Kentucky law is clearly applicable pursuant to subsection (1) because it is undisputed that the injured person and the person who caused the injury were domiciled in the same state, namely, Kentucky. Thus, according to defendants, Kentucky law is applicable regardless of where the injury and conduct which caused the injury occurred. However, defendants' arguments fail to take into consideration LSA-C.C. art. 3548, which provides:
For purposes of this Title, and provided it is appropriate under the principles of Article 3542, a juridical person that is domiciled outside this state, but which transacts business in this state and incurs a delictual or quasi-delictual obligation arising from activity within this state, shall be treated as a domiciliary of this state.
Clearly, in this case, Pittsburgh meets the requirements of this article and therefore shall be treated as a domiciliary of Louisiana. The record supports this conclusion as Pittsburgh is a juridical person, domiciled outside of Louisiana (in Kentucky), transacting business in Louisiana, and is defending against a delictual obligation arising from its activity in Louisiana. Therefore, subsection 2(a) of LSA-C.C. art. 3544 is applicable and controlling. Under that provision, Louisiana law would apply because at the time of injury, both the decedent and Pittsburgh were domiciled in different states, and both the injury and the alleged conduct causing the injury occurred in Louisiana. As noted in comment (b) to LSA-C.C. art. 3548, where the injurious conduct as well as the resulting injury occurs in Louisiana, but neither the victim nor the tortfeasor is domiciled in Louisiana, Louisiana law would govern if the tortfeasor is a juridical person meeting the qualifications prescribed by the article.
However, once again our inquiry does not end here. LSA-C.C. art. 3548 requires an examination of whether the choice of law "is appropriate under the principles of Article 3542."
Here, we find that the application of Louisiana law to the issue of defendants' immunity is appropriate under LSA-C.C. art. 3542. While we recognize Kentucky's interest in applying its worker's compensation law to regulate the rights and liabilities of the employer and the injured employee, we also acknowledge Louisiana's substantial interest in protecting workers from intentional harm. Moreover, article 3542 refers to the place of conduct and injury, which in this case is Louisiana. While we recognize that plaintiff and the decedent are domiciliaries of Kentucky, we find it significant that Pittsburgh was conducting business in Louisiana, and that the accident and death occurred in the course of conducting this business in Louisiana. Moreover, by conducting business in Louisiana, we cannot find that Pittsburgh would not have anticipated that it could be subjected to Louisiana law. Finally, pursuant to article 3542, we have considered the policies of deterring wrongful conduct and repairing the consequences of injurious acts, which we find will be furthered by the application of Louisiana law to the issues presented herein.
*1308 By our statements herein, we do not set forth an absolute rule. Indeed, the very foundation of conflict of laws principles envisions a case by case analysis. As the comments to LSA-C.C. art. 3548 recognize, when appropriate and where, as here, the alleged tortfeasor is a juridical person who meets the qualifications prescribed in article 3548, "the court could decide to treat that person as a Louisiana domiciliary for the purposes of the particular case." LSA-C.C. art. 3548 comment (b). As the comments note, "[t]his would mean that the case would be governed by Louisiana law, irrespective of whether that law favored the plaintiff or the defendant, because both the conduct and the resulting injury would have occurred in the state of `domicile' of one of the two parties."

CONCLUSION
For the above and foregoing reasons, we find that the trial court did not err in denying the motion for summary judgment filed by defendants, Pittsburgh Tank & Tower Company, Inc., and William D. Johnson. Accordingly, the writ of certiorari previously granted herein is recalled, and the relief requested by defendant/relators is denied. All costs are assessed against defendants.
WRIT DENIED.
FITZSIMMONS, J., concurs and assigns reasons.
FITZSIMMONS, Judge, concurring, with reasons.
I agree with the resolution of the problem before us, but my experiences with Book Four of the Louisiana Civil Code, entitled Conflict of Laws, compel me to assign additional reasons.
Louisiana Civil Code article 2 provides: "Legislation is a solemn expression of legislative will." Unfortunately, the will of the legislature is not always apparent. Civil Code article 3544 illustrates the duality and ambiguity that creates myriad interpretations of law. Such multiple interpretations undermine one of the basic functions of law, to provide predictability and reliability in law for the public.
The introductory paragraph to article 3544 states that "loss distribution and financial protection are governed ... by the law designated in the following order: ...." The phrase "following order" usually signals the reader that a prioritization of principles follows. The reader is prepared to analyze the problem in steps, until the answer is found. Once the answer is found, the reader need go no further. However, a sequential application of article 3544 to the facts would not provide a full answer to the problem.
Part 2 of article 3544 governs a tortfeasor and plaintiff who are "domiciled" in "different states...." Whether "different states" means that each of the opposing parties is from a common state, other than Louisiana, or one party is not from Louisiana, or no one is domiciled in Louisiana and each party is from a different state, is an open question. While the comments are helpful, the illustrations can be less than resolutory.
Article 3544(2)(a) and (b) present different factual situations. The placing of "and" between them, appears to link them in some unannounced pattern. Alas, for the reader, any attempt at linking is futile. Even if reader finally resolves the conflict by continued analysis of article 3544, the quest may not be over.
A trap for the uninitiated, those of us who are not scholars in conflict of laws, has been set by article 3544's apparent resolution of conflicts based on all possible domicile combinations, without a specific reference to the alternative domicile allowed by Civil Code article 3548. Civil Code article 3548 permits the trial judge to assign domiciliary status, if (1) certain prerequisites are met, and (2) the trial judge feels such an assignment is for the best after considering the policies announced in Civil Code article 3542, which, of course, refers one to Civil Code article 3515. After meeting article 3544, an introduction to articles 3515 and 3548 appears less than appetizing.
The comments to Civil Code article 3548 are the best witness to the confusion swirling around these articles. Civil Code article 3544(1) appears to be the most straight forward provision. When both parties are domiciled in the same state, part one provides *1309 that the law of the common domicile controls. Revision Comment (c) explains that the objective of article 3544 "is to lighten the court's choice-of-law burden by attempting to identify those cases for which a safe choice-of-law rule could be established in advance based on accumulated experience." Revision Comment(b) of article 3548 shatters any assumption that resolution of the conflict over choice-of-law is predictable or that the court's burden is lightened. The comment suggests an alternative resolution to the common domicile choice, by assigning Louisiana as the domicile of a party-corporation because of various policies outlined in article 3542. Wouldn't it have been simpler to just have enacted article 3542 alone, for all delictual and quasi-delictual obligations? Why treat juridical persons differently from other tortfeasors. Callous or negligent citizens come in all types. Better still, perhaps the guiding general provision, Civil Code article 3515, virtually identical in scope to article 3542, should have been the only choice-of-law provision.
To further the interests of justice and judicial efficiency, the problem presented by this particular set of facts must be resolved, in spite of the confusion. The opinion settles the conflict by choosing the law of Louisiana. After several reviews and analyses of the applicable Civil Code articles, I agree that Louisiana is the best choice under the facts and circumstances of this particular case for this particular issue. The reader is warned not to place too much reliance on any one opinion or resolution decided under the Conflict of Laws articles. For instance, Kentucky law may well apply to yet another issue in this very case.
Often the law is embroiled in a debate between the concept of "positive law" and "naturalistic law." While it is obvious that these articles were intended to resolve myriad complex issues, they have sought to reach a goal too great. In my opinion, and respectfully, our conflict of laws articles should be as "positive" (in the sense of firm, clear, simple) as possible.
The "difficult or complex case" should be solved by the courts using a naturalistic approach in the rare instance that only occasionally arises. The trial court needs more direct guidance than these articles provide.
NOTES
[1] By original and amended petitions, plaintiff also sued the following defendants: Van Meter Insurance Company of Bowling Green, Kentucky, The Travelers Insurance Company, Liberty Mutual Insurance Company (Liberty Mutual), and United States Fidelity and Guaranty Company (USF & G). Our review of the record shows that of these insurers, the only remaining defendants are Liberty Mutual and USF & G. The motion for summary judgment was filed on behalf of Pittsburgh and William D. Johnson.
[2] In support of its motion for summary judgment, defendants cited Kentucky Revised Statute 342.690, which provides, in pertinent part, as follows:

342.690. Exclusiveness of liability.(1) If any employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death.... The exemption from liability given an employer by this section shall also extend to such employer's carrier and to all employees, officers or directors of such employer or carrier, provided the exemption from liability given an employee, officer or director or an employer or carrier shall not apply in any case where the injury or death is proximately caused by the willful and unprovoked physical aggression of such employee, officer or director.
[3] LSA-R.S. 23:1032 provides, in pertinent part, as follows:

A. (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages....
B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
[4] By Acts 1996, First Extraordinary Session, No. 9, effective May 1, 1996, LSA-C.C.P. art. 966 was amended and reenacted as follows:

A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.
D. The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall be rendered at least ten days prior to trial.
E. A summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
F. A summary judgment may be rendered on the issue of insurance coverage alone although there is a genuine issue as to liability or the amount of damages.
G. Notwithstanding any other provision of this Article to the contrary, the burden of proof shall remain with the mover.