807 So.2d 1171 (2002)
PELICAN POINT OPERATIONS, L.L.C.
v.
CARROLL CHILDERS COMPANY.
No. 2000 CA 2770.
Court of Appeal of Louisiana, First Circuit.
February 15, 2002.
*1172 Joseph C. Wiley, Gonzales, for Plaintiff/Appellee Pelican Point Operations, L.L.C.
Ricky L. Babin, Gonzales, for Defendant/Appellant Carroll Childers Company.
Before: FITZSIMMONS, DOWNING and LANIER, JJ.[1]
DOWNING, J.
Carroll Childers Company (Childers), a Texas corporation, appeals an adverse *1173 judgment wherein the trial court found it liable to Pelican Point Operations, L.L.C. (Pelican Point) for damages to Pelican Point property. In an attempt to collect the remaining balance due from a third party subcontractor on the pumping station that ran the Pelican Point golf course irrigation system, Childers resorted to self-help tactics and disabled the pumping station. Then the rain came and washed away much of the fertilizer/herbicide compound that had just been applied. The trial court awarded damages against Childers for the cost of making the pumping station workable, the cost of the lost fertilizer/herbicide, the cost of subsequent remediation and weed control, court costs and attorney fees. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
In late February 1998 Childers sent notice to Pelican Point that Childers had a security interest[2] under the Uniform Commercial Code (UCC) in a pumping station that a subcontractor had installed to irrigate the Pelican Point golf course in Ascension Parish and that the pumping station was not completely paid for. Childers' correspondence informed Pelican Point that it would "reclaim the equipment" unless the balance was paid within ten days.
Pelican Point responded that it had paid all its bills and that collection efforts should be directed to the contractor or to the subcontractor that actually purchased the pumping station. Nonetheless, on March 3, 1998 a Childers representative entered the enclosed pumping stationing station at Pelican Point and disabled the irrigation system by removing fuses and disabling the computer program data that controlled the system.
The next morning, Childers' representative approached Pelican Point managers and offered to restart the pumping station if Pelican Point would make arrangements to pay the debt. When the Pelican Point managers refused and threatened to call the sheriff, the Childers representative left. Later, Childers sent a fax stating its actions were "in strict compliance with the Uniform Commercial Code." Texas law allows such self-help measures. Louisiana's version of the UCC, however, does not. See La. R.S. 10:9-503. Pelican Point's counsel advised Childers' counsel that self-help remedies are not permissible under Louisiana's version of the UCC and that Childers should immediately repair the pumping station. Despite negotiations over the next few days, including assurances that the general contractor who built the golf course would pay all outstanding sums due, Childers refused to replace the fuses and re-start the pumping station unless Pelican Point would waive all claims for damages resulting from Childers' employment of self-help tactics in shutting down the irrigation pumping station. Pelican Point refused Childers' conditions.
On March 6, 1998 Pelican Point filed a petition for injunction and damages against Childers. On that same day a heavy rain fell on the Pelican Point property and washed away large amounts of a fertilizer/pre-emergent herbicide compound known as Regal Star II, the application of which had just been completed the day the irrigation pumping station was disabled. Because of the immediate need to re-start the pumping station, Pelican Point hired another company to fix and restart the pumping station. The pumping *1174 station was finally operational eleven days after it had been shut downwithout any help or cooperation from Childers.
As the litigation progressed, Childers filed a reconventional demand against Pelican Point claiming unjust enrichment. Pelican Point amended its petition alleging unfair and deceptive trade practices. The matter finally went to trial on December 14, 1999. After hearing the evidence and reviewing post-trial memoranda, the trial court ruled in favor of Pelican Point, awarding damages for the cost of making the pumping station workable, the cost of the lost fertilizer/herbicide, the cost of subsequent remediation and weed control, court costs and attorney fees.
Childers now appeals asserting five assignments of error: 1) that the trial court erred in not applying Texas law pursuant to conflicts of law provisions contained in the UCC; 2) that Pelican Point failed to meet its burden in proving that Childers' actions caused its damages; 3) that the trial court erred in granting Pelican Point double recovery for the cost of both the lost fertilizer/herbicide and the costs of remediating the golf course; 4) that Pelican Point failed to mitigate damages; and 5) that the trial court erred in awarding attorney fees to Pelican Point without statutory or contractual authority.

DISCUSSION

CONFLICT OF LAW

(ASSIGNMENT OF ERROR NO. 1)
Childers argues that Texas law, particularly Texas Business & Commercial Code Annotated § 9.503[3] (Tex.UCC) which allows a secured party to render equipment unusable, controls our analysis of this litigation. In so arguing Childers asserts that Louisiana does not have an "appropriate relation" to the "transactions" as required by La. R.S. 10:1-105(1) before Louisiana law would control. La. R.S. 10:1-105(1) as applicable in March 1998[4] specifically provides as follows:
Except as provided hereafter in this Section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this Title applies to transactions bearing an appropriate relation to this state. (Emphasis added.)
We note, however, that there is no agreement between Pelican Point and Childers. We also note that there was no transaction of any sort between Childers and Pelican Point. It appears, therefore, that La. R.S. 10:1-105(1) is inapplicable to the issues at hand.
Louisiana's conflicts of laws provisions contained in Book IV of the Civil Code are mindful of the purpose and policy of the Louisiana Commercial Laws contained in Title 10 of the revised statutes, particularly as set forth in La. R.S. 10:1-102(2)(c): "to promote uniformity of the law among the various jurisdictions." See Louisiana Civil Code article 3515 which applies to conflicts of laws not otherwise specifically governed by other code articles.[5]
*1175 In its petition, Pelican Point sued Childers alleging several acts of misconduct including trespass, theft, burglary and unfair and deceptive trade practices. Childers raised the defense that its conduct was permissible under the Texas version of the Uniform Commercial Code. While the nature of the dispute before us is based on claims of tortious conduct, Childers' defense is one that pertains to loss distribution and financial protection. Accordingly, we hold that La. C.C. art. 3544 governs our analysis of this specific issue. See Rigdon v. Pittsburgh Tank & Tower Company, Inc., 95-2611, p. 7 (La. App. 1 Cir. 11/8/96), 682 So.2d 1303, 1306, where this court observed that while the merits of plaintiffs' claim may pertain to issues of conduct and safety, the issue before the court, namely, whether defendants are immune from tort liability, was an issue of loss distribution and financial protection, governed by La. C.C. art. 3544. The Rigdon court explained that Louisiana's conflict of laws principles recognize the concept of "depecage," as La. C.C. arts. 3515 and 3542 use the term "issue." Under this concept, courts utilize an issue-by-issue analysis that may result in laws of different states being applied to different issues in the same dispute. Id. La. C.C. art. 3544 provides as follows:
Issues pertaining to loss distribution and financial protection are governed, as between a person injured by an offense or quasi-offense and the person who caused the injury, by the law designated in the following order:
(1) If, at the time of the injury, the injured person and the person who caused the injury were domiciled in the same state, by the law of that state. Persons domiciled in states whose law on the particular issue is substantially identical shall be treated as if domiciled in the same state.
(2) If, at the time of the injury, the injured person and the person who caused the injury were domiciled in different states: (a) when both the injury and the conduct that caused it occurred in one of those states, by the law of that state; and (b) when the injury and the conduct that caused it occurred in different states, by the law of the state in which the injury occurred, provided that (i) the injured person was domiciled in that state, (ii) the person who caused the injury should have foreseen its occurrence in that state, and (iii) the law of that state provided for a higher standard of financial protection for the injured person than did the law of the state in which the injurious conduct occurred. (Emphasis added.)
Therefore, since Pelican Point and Childers are domiciled in different states and both the injury and the conduct that caused it occurred in Louisiana, Louisiana law applies to the facts of this case. La. C.C. art. 3544(2)(a). We conclude that La. C.C. art. 3548, concerning domicile of juridical persons, is not pertinent to our analysis here because the record contains no evidence that Childers has transacted any business in this state. Nonetheless, we note that Texas has no interest in sanctioning torts and possible criminal activity in Louisiana. And we note Louisiana's *1176 strong and long-standing abhorrence of self-help.[6]
Childers' first assignment of error is without merit.

DAMAGES

(ASSIGNMENTS OF ERROR NOS. 2, 3 AND 4)
Childers next argues that evidence does not support the trial court's damage award, that the award grants double recovery in some respects and that Pelican Point failed to mitigate damages. The record clearly supports the trial court's conclusion that Childers was liable for damages, so we examine the particular awards at issue, attentive to the rule that a court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Further, as the trier of fact, a trial court is free to accept or reject, in whole or in part, the testimony of any witness. Scoggins v. Frederick, 98-1814 to 98-1816, p. 15 (La.App. 1 Cir. 9/24/99), 744 So.2d 676, 687.
First, Childers argues that the awards for lost Regal Star II and chemicals used for remediation were based on speculation and conjecture. In making these awards, the trial court apparently granted seventy-five percent (75%) of the total invoices Pelican Point paid for these items. We conclude that the record supports an award of at least the amounts awarded for these items. Therefore, they are not manifestly erroneous.
Regarding the Regal Star II, the fertilizer/herbicide compound washed away in the downpour on March 6, 1998, the trial court in its written reasons noted an expert's testimony that if the product had been irrigated prior to the heavy rain three days after the pumps were disabled, the herbicide and fertilizer would have soaked into the ground. The record supports a finding that "[e]verything that [was] put out was basically useless" and that Pelican Point did not have hardly any gain from what [the fertilizer/herbicide compound] did there. The record further supports findings that the herbicide was almost completely washed into low spots, providing little or no weed control for the golf course. The record shows some benefit, if it can be called that, from the fertilizer. Some areas were fertilized, but the result was streakiness in the grass, grass discoloration, some leaf burn and inadequate growth in unfertilized areas. Based on the evidence in the record, Childers has no basis to complain that this damage award is unsupported by the record. We note that Pelican Point does not challenge this award.
Similarly, the trial court was not manifestly erroneous in making its award for the costs of materials used to replace loss of fertilizer, herbicide and for chemical burn. The record reflects that the invoices provided to support these damages were limited to materials used to specifically remediate problems caused by the loss of the Regal Star II. Witness testimony supports a finding of fact that Pelican *1177 Point did not attempt to charge Childers for chemicals used in its routine maintenance. Again, Childers has no basis to complain that this damage award is unsupported by the record. This award is also unchallenged by Pelican Point.
Assignment of error no. 2 is without merit.
Childers next argues that Pelican Point is receiving double recovery because it is being compensated for both the loss of the fertilizer and the cost of remediation. We disagree. The trial court accepted the testimony that the heavy rain of March 6, 1998 washed away much of the Regal Star II. The record supports a finding that had the herbicide portion properly leached into the ground, Pelican Point would not have had the severe weed problem and turf response that endured all the following summer. The further applications of fertilizer, herbicide and other chemicals and materials did not replace the lost Regal Star II. Pelican Point needed to apply these to control and remediate, often unsuccessfully, weed and turf problems it should not have had if the Regal Star II had not been washed away in great portion. The second award covered expenses Pelican Point would not have incurred had the Regal Star II been allowed to work. We note that despite Childers' contentions, none of the award appears to reimburse Pelican Point for the labor of its employees.
Childers' third assignment of error is without merit.
Childers next argues that Pelican Point failed to mitigate damages, arguing that Pelican Point refused to cooperate with the Childers representative, failed to employ simple measures to re-start the pumping station and failed to employ temporary pumps until the pumping station at issue could be re-started. In written reasons, the trial court found that Pelican Point "did everything humanly possible to get defendant to place the pump back in working condition to avoid further damage to the course, to no avail."
The record shows that Childers refused to re-start the pumping station, first until Pelican Point would agree to pay a bill it did not owe, then until Pelican Point would agree to waive its claim for damages. Pelican Point refused these conditions and filed a suit for injunction and other relief within three days of Childers' shutting down the pump.
Pelican Point had to hire another firm to reprogram the pump. They re-started the pump within eleven days. Childers argues that the pump could have been re-started simply if Pelican Point had replaced the fuses and reset the pump by pulling out and reinserting the battery. Childers, however, presented no evidence that Pelican Point or the company it hired to fix the pumping station knew of this remedy. Without such evidence, it is disingenuous for Childers to argue Pelican Point could mitigate its damages in this fashion.
Further, a Pelican Point representative testified that he did not consider the use of temporary pumps because he did not think it would be economically feasible. Also, no evidence was presented regarding how quickly such a system could have been set up.
The trial court was not manifestly erroneous in concluding Pelican Point did not fail to mitigate damages.
Assignment of error no. 4 is without merit.

ATTORNEY FEES

(ASSIGNMENT OF ERROR NO. 5)
Generally, attorney fees are not recoverable unless expressly provided for by statute or contract.[7]See, e.g., Quealy *1178 v. Paine, Webber, Jackson, & Curtis, Inc., 475 So.2d 756, 763 (La.1985). Here, Pelican Point cites several possible bases for an award of attorney fees, only one of which is specifically authorized by statute: La. R.S. 51:1409. This statute addresses private actions under the Unfair Trade Practices and Consumer Protection Law, and Pelican Point made demand under this statute.[8]
While the trial court did not specifically find that Childers used or employed an unfair or deceptive method, act or practice in violation of La. R.S. 51:1405, it did find that Childers committed a clandestine trespass for the purpose of disabling the pumping station. The trial court concluded that Childers' conduct was an egregious and flagrant disrespect for the laws of this state. This is tantamount to a finding of an unfair trade practice. And the record supports a conclusion that Childers continued an attempt to force payment on a debt Pelican Point did not owe and to impose other conditions on Pelican Point after it knew Pelican Point was not liable for the debt and knew Louisiana law did not allow it to employ self-help tactics to collect the debt. Accordingly, the record supports a conclusion that Pelican Point suffered an ascertainable loss as a result of an unfair trade practice as contemplated in La. R.S. 51:1409.
Louisiana Revised Statute 51:1409 mandates an award of reasonable attorney fees and costs to the person bringing the action. Accordingly, we affirm the trial court's award of attorney fees in this matter. Because of this resolution, we pretermit consideration of the other bases for the award of attorney fees suggested by Pelican Point.
Childers' fifth assignment of error is without merit.

CONCLUSION
We close by paraphrasing the Louisiana Supreme Court in its October 1841 decision in Thayer v. Littlejohn, 1 Rob. (La. 1841) 140, 140 where it laments the employment of "frontier process" in collecting the debt at issue. While we regret the obligation we are under of recording in our judgment a resort to force and violence by Childers, instead of an application to courts of justice in redressing its grievances, we are much gratified by the opportunity of expressing our approbation of the due sense which the trial court manifested of its duty to prevent the recurrence of acts showing such disregard of the law, and all attempts to seek redress through violence and force, by persons who fancy themselves injured, or are really so.
The judgment of the trial court is affirmed. Costs are taxed to Childers.
AFFIRMED.
FITZSIMMONS, J., concurs in the result in part, dissents in part, and assigns reasons.
*1179 FITZSIMMONS, Judge, concurring in part and dissenting in part, with reasons.
I respectfully concur in the portion of the majority decision that confers applicability of Louisiana law to this case. It is, however, suggested that the claims at hand involve a transaction "that bears an appropriate relation to this state." See La. R.S. 10:1-105(1). While the direct sale of the pumping station was between Pelican Point and Pelican Point's contractor or subcontractor, the pumping station was delivered by Childers to the site in Louisiana, which was property owned by Pelican Point. The transaction bore an appropriate relation to Louisiana. In this regard, the majority's statement that La. C.C. art. 3548 is inapplicable because Childers never transacted any business in this state also seems factually unsupportable.
It is additionally with respect that I dissent from the majority's decision to affirm the trial court's award of damages. Double recovery exists when there is reimbursement of the cost of the original chemicals combined with reimbursement of the cost of the replacement chemicals. That is what occurred in the instant case.
NOTES
[1] The Honorable Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Childers filed a UCC-1 security interest form with the Louisiana Secretary of State and with the Clerk's office in Ascension Parish. The efficacy of this filing is not an issue in this litigation, though a records search of the Parish records indicated no valid liens on the Pelican Point property.
[3] Texas Business & Commercial Code Annotated § 9.503 provides in pertinent part as follows:

Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without a breach of the peace or may proceed by action.
[4] Louisiana Revised Statute 10:1-105 was revised by Acts 1999, No 171, § 1, effective January 1, 2000. The above quoted text has not been amended.
[5] Louisiana Civil Code article 3515 provides as follows:

Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state. (Emphasis added.)
[6] See Bruce V. Schewe, Comment, Civilian Thoughts on U.C.C. Section 9-503 Self-help Repossession: Reasoning in a Historical Vacuum, 42 La. L.Rev. 239, 258-267 (1981); see also Lewis v. Burglass, 172 So. 807, 808 (La. App. Orleans 1937) where the court observed the following:

There can be [no] doubt that the jurisprudence of this state is firmly established, beginning with the case of Thayer v. Littlejohn, 1 Rob. 140, that a vendor or transferor of movables, who illegally invades the premises of the vendee and seizes the conveyed property, is responsible in damages.
[7] But see Perron v. Evangeline Parish Police Jury, 01-0603, p. 10 (La.10/16/01), 798 So.2d 67, 74, where the Louisiana Supreme Court allowed an award of attorney fees not specifically provided for by statute or contract where it "rel[ied] upon a reasonable interpretation of a particular statute" that authorized payment of "all necessary or unavoidable expenses" or where a claim bears on a public officer's "right to perform his mission in a reasonably effective manner." Because of the disposition we make, we do not address whether attorney fees are allowable under "reasonable interpretation."
[8] Childers raised the issue of preemption at the trial court because Pelican Point's petition was not amended to include a claim for unfair trade practices until well after one year of the incident and of the filing of the original petition. The trial court did not specifically rule on this issue, but awarded attorney fees nonetheless. Childers does not argue this issue on appeal.