601 So.2d 739 (1992)
Joey JEANSONNE
v.
Gerald BOSWORTH and William S. Bordelon.
No. CA 91-0461.
Court of Appeal of Louisiana, First Circuit.
May 22, 1992.
*740 Nanette J. Cagney, Lafayette, for plaintiff and appellantJoey Jeansonne.
Albert H. Hanemann, Jr., New Orleans, for defendants and appelleesGerald Bosworth and William S. Bordelon.
Before LOTTINGER, EDWARDS and GONZALES, JJ.
GONZALES, Judge.
This is an appeal of a legal malpractice case. On March 1, 1982 plaintiff Joey Jeansonne was injured while working on an offshore platform. The platform was located on the outer continental shelf off the coast of Louisiana. Jeansonne and another man had strapped themselves to a gin pole and were being lifted, along with the pole, on a half-inch Manila rope. The rope broke *741 and both men fell to the ground, with the gin pole penetrating Jeansonne's foot.
On March 19, 1982, Jeansonne engaged the services of Baton Rouge attorney William S. Whatley to represent him in connection with his personal injuries. On December 30, 1982, Jeansonne fired Whatley and hired Houma attorney Gerald Bosworth. Between six and ten days (plaintiff and defendant disagree on the exact date) before the anniversary date of the accident, Bosworth associated with William S. Bordelon, a Houma attorney, to assist him in the preparation and filing of a complaint on Jeansonne's behalf. Bordelon drafted the complaint and filed it in federal court on February 28, 1982, one day before the anniversary date of the accident. The named defendants were Lafayette Tower Service, Inc., ODECO Oil and Gas Company and Union Oil Company of California.
Shortly thereafter, Jeansonne fired Bosworth and hired a fourth attorney, Tommy Curtis, to represent him. Curtis settled with defendants in that suit, Lafayette Tower Service, Inc., Odeco, Inc., and Union Oil Company of California.
Jeansonne filed this suit against Whatley, Bosworth, and Bordelon, alleging that Whatley, Bosworth and Bordelon failed to ascertain the identity of the seller and manufacturer of the rope which broke and failed to name the manufacturer and seller in the suit before the prescription date; that they failed to act to preserve the rope involved; and that they allowed certain claims of Jeansonne's to prescribe. By supplemental and amending petition Jeansonne added Bordelon's malpractice insurer, Insurance Corporation of America, and Bosworth's malpractice insurer, ABC Insurance Company, as defendants.
Jeansonne and Whatley reached a settlement and Whatley was dismissed from the suit. Shortly before trial, Bosworth filed for bankruptcy and proceedings against him were stayed. The case, therefore, went to trial on October 24, 1988 against the sole remaining defendant, Bordelon. After trial on the merits, judgment was rendered in favor of Bordelon and plaintiff's suit was dismissed. The court found that Bordelon's duty to Jeansonne was limited and that he discharged that duty in the manner of a prudent practicing attorney. Plaintiff filed a motion for new trial, which was denied. Plaintiff is appealing that judgment.
ASSIGNMENTS OF ERROR
1. Did William S. Bordelon, as associated counsel, have a duty to the client, Joey Jeansonne, to adequately and thoroughly investigate his claim for all possible causes of action arising from his accident.
2. Was William S. Bordelon negligent in failing to ascertain the identity of the rope manufacturer/seller, and to timely file a products liability action.
3. Assuming that Bordelon was negligent, did that negligence deprive Joey Jeansonne of monetary damages he would have received had such a products liability suit been filed.
4. Should attorney Bosworth have been relieved of his duty to testify by exercising his Fifth Amendment right against self incrimination, and if so, should his deposition be admitted into evidence over the objection of plaintiff's counsel.
5. Should a subsequent judgment have been issued on the 13th day of February, 1991, dismissing William S. Bordelon's malpractice insurer, Insurance Company of America, from this suit thereby casting Joey Jeansonne with all the costs of these proceedings.

ASSIGNMENTS OF ERROR NO. 1, 2, AND 3
The decision to not pursue a products liability claim was a judgment call by Bordelon. An attorney need not make a wasted effort and file suit against a non-viable defendant. Bordelon was not found liable to plaintiff, not because this was a weak products liability case, but because the rope was not discovered by the previous lawyer or the client during the whole year. An attorney receiving a case from another attorney is entitled to place some reliance upon that attorney's investigation. Smith v. Our Lady of Lake Hospital, 960 *742 F.2d 439 (5th Cir.1992). There was no evidence of a defect in the rope. The likelihood of proving that the rope was intact and undamaged at the time of the accident was very slim.
We adopt the following from the reasons for judgment:
In the case at bar, Bordelon had very little time to make any reasonable inquiry. His involvement in the case was not through direct contact with the client, but rather through Bosworth, who gave him specific instructions. Furthermore, even if he had attempted to locate the rope and ascertain the name of the seller and/or manufacturer, it is doubtful he would have succeeded because the rope had more than likely disappeared. Ricky Jeansonne, the brother of plaintiff, testified he saw the rope at Lafayette Tower Service when he began working there in April of 1982, but he did not recall seeing the rope after six or seven months, i.e. November of 1982. Without the rope, there would be little likelihood of a successful action, according to attorneys, J.D. Schoonenberg, for the defendant, and William Miles, for the plaintiff.
We also adopt the following from the reasons for judgment:
Without the rope, there would be little likelihood of a successful products liability action. It is also questionable as to whether the rope was defective. Neither Bosworth nor even Jeansonne believed the rope was defective or that such a defect caused the fall. In a September 3, 1985 deposition, Jeansonne testified that he had no reason to believe that the rope was defective. Bosworth likewise had stated in a November 24, 1986 deposition that he had no reason to believe the rope was defective. He surmised that the rope was just too small for the weight it was hoisting. Defendant's expert, Stephen Killingsworth, P.E., wrote in a report admitted into evidence that, assuming the rope was a new, one-half inch manila rope, it had a maximum working load of 264 pounds. At the time of the accident, it is estimated the load was about 490 poundsalmost double the maximum working load intended for the rope. Killingsworth added that fractional (sic) factors would increase the working load to 698 pounds. An acceleration factor would further increase the load to 1,050 pounds. However, he added that the rope's tensile strength should have been 2,380 pounds, and that therefore, it should have supported a working load of 1,050 pounds. But the safety factor (two to one) would have been less than that desired by the manufacturer. Thus, there is some question as to whether the rope was defective. Furthermore, using a manila rope in such a fashion was not a common practice. Although Jeansonne testified at trial that he frequently had ridden a gin pole into a tower on a half-inch manila line, he admitted on cross-examination that he had stated in depositions that he had never ridden on a half-inch manila line. On other occasions, he had ridden on a wire cable.
These assignments of error have no merit.

ASSIGNMENT OF ERROR NO. 4
During this trial, the plaintiff called defendant, Bosworth, to the stand, apparently to cross examine him as provided under article La.C.C.P. art. 1634. To these questions, Bosworth asserted his privilege under the Fifth Amendment of the United States Constitution not to incriminate himself as to all questions. The trial court recognized Mr. Bosworth's assertion of the privilege. To this ruling, no objection was urged. Since Bordelon was unable to procure the testimony of Bosworth by means of direct examination, he sought the introduction of his previous deposition in the case. To the introduction of this evidence, the plaintiff did interpose a timely objection, but specified no grounds for the objection. The plaintiff assigns as error both the procedural aspects of allowing Bosworth to take the Fifth Amendment and the evidentiary ruling allowing the introduction of the deposition.
As to the ruling allowing Bosworth to assert his Fifth Amendment privilege, *743 we rely on the provisions of La.C.C.P. art. 1635 which says:
Formal exceptions to rulings or orders of the court are unnecessary. For all purposes it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefore; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him. (emphasis added)
This article requires contemporaneous objection to procedural matters before the court and also requires the giving of grounds for the objection. It is noted from the record that no objection was urged to the ruling by the court allowing the exercise of the Fifth Amendment privilege, it is therefore deemed waived.
Louisiana Code of Evidence article, 103(A)(1) which is the article governing rulings admitting evidence, clearly sets forth a two-fold procedure for objecting. It requires both a contemporaneous objection and an enunciation of the specific grounds for the objection. Although a contemporaneous objection was made to the admissibility of the deposition testimony, no grounds were specified as the basis for the objection.
The defendant argues, in support of the judge's ruling concerning the deposition, the provisions of La.C.C.P. art. 1450. Specifically, he cites paragraph (A)(2) which reads in pertinent part:
"The deposition of a party ... may be used by an adverse party for any purpose." (emphasis added)
Paragraph (A) of article 1450 subordinates the use of depositions to the Louisiana Code of Evidence. Depositions are generally hearsay, and like any other written document offered to prove the truth of the contents contained therein, a foundation is required showing that 1) the document is authentic (it is what it purports to be), 2) that it is relevant, and 3) that it is not barred by the prohibition against hearsay testimony. La.C.E. arts. 901, 402, 802. There are generally two major ways of circumventing the hearsay rule. Either the writing is a statement of a party opponent and is used against him and under La.C.E. art. 801(D)(2) is defined as non-hearsay, or the writing falls within one of the exceptions to the hearsay rule under La.C.E. arts. 803 and/or 804. Writings which are non-hearsay under La.C.E. art. 801(D)(2) only require that the offering be the witness's own statement, either in his individual or representative capacity, and that it is offered against a party. The offering in this case was not sought to be used against Bosworth. On the contrary, it was sought to be used in favor of or for Bordelon. Just as a lawyer cannot call his own client and use his depositions for him, an attorney cannot call a co-defendant and use the co-defendant's depositions in favor of his own client. Since by its terms La.C.C.P. art. 1450 is subject to the Code of Evidence, and since under the facts of this case the offering is not defined as non-hearsay under La.C.E. art. 801(D)(2), it can only be admitted if it is found to be an exception to a hearsay rule under article 803 and/or 804 of the Code of Evidence. None of the provisions of La.C.E. art. 803 allow for its introduction, however La.C.E. art. 804 does allow for the introduction of certain testimony where the declarant is unavailable. Under provisions of La.C.E. art. 804(A)(1) a witness is deemed to be unavailable when he is exempted by ruling of the court on grounds of privilege from testifying. However, the deposition testimony involved in this case does not fall under any of the first five categories which allow admission under La.C.E. art. 804(B). As to the catch-all provisions of admissibility under La.C.E. art. 804(B)(6), this exception requires some inherent trustworthiness and prior notice of intent to offer. No prior notice was given in this case and there is nothing about this deposition testimony which would brand it inherently trustworthy.
Similarly, Code of Civil Procedure article 1450(A)(2), although it does not require a deposition be used against, it does *744 require that the deposition be used by an adverse party. This is the same functional approach in La.C.C.P. art. 1450 and dovetails completely with the concept of non-hearsay in La.C.E. art. 801(D)(2).
Although the reasons advanced by the defendant for the admissibility of the deposition testimony are without merit, that does not mean the court erred in allowing the testimony to be admitted, because article 103 of the Code of Evidence requires both a timely and a specific objection to a ruling admitting evidence. The evidence in this case is admissible because the objection has been waived since there were no specific grounds for its inadmissibility stated by counsel in his objection. The reason for this rule is to give not only the court, but also the opponent the chance to meet or cure the grounds for the objection if he can do so. Louisiana Code of Evidence article 103(A)(1) provides in part as follows:
(A) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
(1) Ruling admitting evidence. When the ruling is one admitting evidence, a timely objection or motion to admonish the jury to limit or disregard appears of record, stating the specific ground of objection.
The Comments to Art. 103 provide in part as follows:
(a) Paragraph A of this Article generally follows Federal Rule of Evidence 103(a), but as a result of Senate Committee amendments is more exacting than its Federal Rules counterpart. It continues the general requirement in Louisiana law that there be a contemporaneous objection.
The Handbook On Louisiana Evidence Law, 1992 edition, by Pugh, Force, Rault & Triche, states in the Authors' Notes to article 103 as follows:
(1) The initial phrase that error "may not be predicated" is perhaps technically imperfect, but in context it means that error may not successfully be raised on appeal unless the requirements of Paragraph A are met at trial ...
(2) By requiring a timely and specific objection or motion for an instruction to disregard, Paragraph (A)(1) is consistent with prior law. See C.Cr.P. Article 841, C.C.P. Article 1635. Generally the courts hold that failure to make a timely specific objection constitutes a waiver of the alleged error. LaHaye v. Allstate Ins. Co., 570 So.2d 460 (La.App. 3 Cir. 1990). Perhaps surprisingly, it has even been held that not even a pre-trial memorandum in opposition to the admissibility of the evidence suffices to preserve the alleged error (emphasis added) ...
(5) The formalities of Paragraph A can constitute a trap for the unwary. Some trial judges quickly sustain or overrule an objection before its grounds have been articulated. Due to the requirement of Paragraph (A)(1) the trial petitioner whose objection is overruled should not hesitate to state its grounds "for the record." Because the Article requires the grounds, counsel has the right to "make a record" as to the grounds (citations omitted, emphasis added)...
A party must make a timely objection to evidence which the party considers to be inadmissible and must state the specific ground for the objection. La.C.E. art. 103; La.C.C.P. art. 1635. The reason for this rule is to afford the trial court an opportunity to prevent or correct prejudicial error. Tutorship of Price v. Standard Life Insurance Company, 569 So.2d 261 (La. App.2d Cir.1990), writs denied, 572 So.2d 91, 92 (La.1991). In light of such lack of specificity, we find that plaintiff has failed to preserve this alleged error for appellate review. See Martinez v. Soignier, 570 So.2d 23, 27 (La.App. 1st Cir.1990), writ denied, 572 So.2d 94 (La.1991).[1] This assignment of error has no merit.

*745 ASSIGNMENT OF ERROR NO. 5
The original judgment rendered by the Court on the merits of this case was issued on October 24, 1989. This judgment dismissed plaintiff's case against William S. Bordelon, and cast plaintiff for the costs of the proceeding. Plaintiff filed a motion for new trial, which motion was denied on December 10, 1990. Plaintiff filed a motion for devolutive appeal of the December 10, 1990 judgment which appeal was granted on January 24, 1991. After plaintiff perfected his appeal, on February 13, 1991, a second judgment was entered, decreeing that Jeansonne's demands against Insurance Corporation of America, Bordelon's malpractice insurer, were dismissed and that plaintiff was cast for all costs of those proceedings. Plaintiff filed a motion for devolutive appeal of the February 13, 1991 judgment which asked that the appeals be consolidated. This motion was granted on March 19, 1991.
Louisiana Code of Civil Procedure article 2088 provides in part:
The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal (emphasis added) ...
This article is to be understood to divest the trial court of jurisdiction over the case when the appeal is taken only with respect to those matters which are reviewable under the appeal. In this case, apparently by oversight, the plaintiff's suit was dismissed against defendant, Bordelon, but not his malpractice insurer. Louisiana Code of Civil Procedure article 1915 in part provides for partial judgments as follows:
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
(1) Dismisses the suit as to less than all of the plaintiffs, defendants, third party plaintiffs, third party defendants, or intervenors...
B. If an appeal is taken from such a judgment, the trial court nevertheless shall retain jurisdiction to adjudicate the remaining issues in the case.
We recognize that under the Louisiana Code of Civil Procedure multiplicity of appeals and piecemeal litigation are not favored. However, the notion that separate judgments are undesirable, because multiple appeals and piecemeal litigation result, has been employed by courts as standards which serve to conserve time and expense for the litigants and the courts; the argument has not been advanced, so far as we can ascertain, to defeat a claim when a court has decided in favor of a litigant, but for some reason has inadvertently failed to incorporate that decision in a proper formal judgment. Walker v. Jones, 257 La. 404, 242 So.2d 559, 564 (1970). Bordelon's malpractice insurer was only liable to plaintiff if Bordelon was found liable to plaintiff. Insurance Corporation of America had no independent grounds of liability to plaintiff outside of its duty to provide the malpractice insurance under contract to Bordelon. Therefore, this second judgment which dismissed Insurance Corporation of America was a correction of an inadvertent failure to include Insurance Corporation of America in the first judgment which dismissed plaintiff's claims against Bordelon.
This assignment of error has no merit.
For the foregoing reasons, we affirm the trial court judgment. Plaintiff-appellant is cast for costs.
AFFIRMED.
EDWARDS, J., concurs.
NOTES
[1] We note that the defendant notes the absence of an objection in the record to the ruling of the court allowing the defense witness to invoke the privilege of the Fifth Amendment. Although article 1635 requires a contemporaneous objection to such a ruling, this has no subsequent effect to the introduction of the deposition, to which timely contemporaneous objection was urged.