938 So.2d 123 (2006)
Floyd HITCHEN
v.
SOUTHLAND STEEL.
No. 2005 CA 1708.
Court of Appeal of Louisiana, First Circuit.
June 9, 2006.
*124 Kent B. Payne, Baton Rouge, Counsel for Plaintiff/Appellee Floyd Hitchen, Jr.
Frank E. Brown, III, Baton Rouge, Counsel for Defendants/Appellants Southland Steel Fabricators, Inc. and Louisiana Worker's Compensation Corporation.
Before: PARRO, McDONALD, and HUGHES, JJ.
HUGHES, J.
An employer and its workers' compensation insurer appeal a judgment awarding an injured employee supplemental earnings benefits. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL HISTORY
Floyd Hitchen, Jr., was employed by Southland Steel Fabricators, Inc. (Southland) as a laborer. In August 2002, Mr. Hitchen injured his back while lifting a heavy load of steel. Mr. Hitchen sought medical treatment for his injury and received medical and indemnity benefits from Southland.
Mr. Hitchen attempted to return to work at Southland; however, due to the pain he experienced when performing his duties, such as turning steel beams, he was unable to continue. In May 2003, a functional capacity evaluation (FCE) was performed on Mr. Hitchen to determine his capabilities. Thereafter, Southland sent Mr. Hitchen's physician a list of janitorial duties it proposed to assign to Mr. Hitchen. These duties included cleaning the shop restroom. Mr. Hitchen's physician approved the janitorial duties as long as they were within the restrictions outlined in the FCE. On June 12, 2003, Southland sent a certified letter to Mr. Hitchen requesting that he return to work and attached the list outlining his new janitorial duties. However, Mr. Hitchen never received the letter or the list of his new duties. Catherine Lombardo, Southland's controller, ultimately reached Mr. Hitchen by phone on June 17, 2003 and told him to report to work on June 18; however, she did not tell Mr. Hitchen what his duties would be.
Mr. Hitchen reported for work at Southland shortly before 7:00 a.m. on June 18, 2003. That morning, when Mr. Hitchen was punching the time clock, his supervisor, Mr. Wyre, smiled at him and told him he had to clean the restrooms, and other employees began laughing. Mr. Hitchen, believing that Mr. Wyre was joking with him, as he usually did, also laughed.
The particular events that transpired after this exchange are somewhat disputed. Mr. Hitchen testified that he jokingly responded to Mr. Wyre that he knew that his duties were not going to include cleaning the restrooms. He further testified that had he thought Mr. Wyre were serious, he certainly would have cleaned the restrooms. However, because he thought *125 it was merely a joke, he did not; rather, he waited around for his actual work assignment. No other duties were assigned to Mr. Hitchen. He stated that Mr. Wyre later came back and told him that Catherine Lombardo had said he could go home.
Mr. Wyre testified that when he told Mr. Hitchen to clean the restrooms, Mr. Hitchen replied, "What?" and laughed. Mr. Wyre stated that Mr. Hitchen never actually refused to clean the restrooms; however, he did not proceed to clean them either. Mr. Wyre testified that he then went into the office and reported to his boss, Joey Lombardo, that Mr. Hitchen apparently was not going to clean the restrooms. After returning from the office, Mr. Wyre discovered that Mr. Hitchen was gone.
The following day, Catherine Lombardo sent a letter to Mr. Hitchen stating that Southland regretted Mr. Hitchen's decision not to return to work. The letter specifically provided: "You were offered a job well within your medical capabilities, confirmed by the doctor, and you stated to Joey Lombardo, plant manager, on Wednesday, June 18, 2003, that you couldn't sweep and that you weren't going to clean restrooms." However, it is worthy of note that neither Catherine Lombardo nor Joey Lombardo testified at the trial of this matter. Indeed, the undisputed testimony of Mr. Hitchen and Mr. Wyre at trial established that no such conversation between Mr. Hitchen and Joey Lombardo took place that morning.
On July 8, 2003, Mr. Hitchen filed a claim for workers' compensation benefits against Southland and its workers compensation insurer, Louisiana Workers' Compensation Corporation (LWCC). Following a trial on December 2, 2004, the workers' compensation judge (WCJ), noting Mr. Wyre's constant smiling and jovial nature on the stand, concluded that a miscommunication between the parties had occurred, and that Mr. Hitchen believed the command to clean the restrooms was just a joke at his expense and not a duty of a legitimately offered job.
On February 10, 2005, the WCJ signed a judgment awarding Mr. Hitchen supplemental earnings benefits in the amount of $240 per week beginning June 18, 2003, and continuing until reduced or terminated, with judicial interest on each payment from the date the payment was due until paid. The judgment further provided that Southland and LWCC had not been arbitrary or capricious; hence, Mr. Hitchen was not entitled to an award for attorney fees and penalties. From this judgment, Southland and LWCC appeal, contesting Mr. Hitchen's entitlement to supplemental earnings benefits and judicial interest.[1] Specifically, they assert that the WCJ erred in finding that a suitable job within his physical capabilities had not been offered to Mr. Hitchen.

STANDARD OF REVIEW
In a workers' compensation case, as in other civil cases, the appellate court's review of factual findings is governed by the manifest error or clearly wrong standard. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder's *126 choice between them can never be manifestly erroneous or clearly wrong. Thus, if the findings of the trier of fact are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks, 96-2840 at pp. 7-8, 696 So.2d at 556. Further, when factual findings are based upon determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact's findings. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).

DISCUSSION
The purpose of supplemental earnings benefits is to compensate an injured employee for the wage earning capacity he has lost as a result of his accident. Banks, 96-2840 at p. 8, 696 So.2d at 556. An employee is entitled to receive supplemental earnings benefits if he sustains a work-related injury that results in his inability to earn ninety percent or more of his average pre-injury wages. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Banks, 96-2840 at p. 8, 696 So.2d at 556. This analysis is necessarily a facts and circumstances one in which the court is to be mindful of the jurisprudential tenet that workers' compensation laws are to be liberally construed in favor of coverage. Banks, 96-2840 at pp. 8-9, 696 So.2d at 556.
Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for supplemental earnings benefits or to establish the employee's earning capacity, must prove by a preponderance of the evidence that the employee is physically able to perform a certain job and (1) that the job was offered or tendered to the employee by the employer or any other employer, or (2) that the job was available to the employee in his or the employer's community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i); Banks, 96-2840 at p. 9, 696 So.2d at 556.
In the present case, the parties do not dispute that Mr. Hitchen suffered an injury that has resulted in his inability to earn ninety percent or more of his pre-injury wages. Rather, the contested issue is whether the WCJ was manifestly erroneous in concluding that Southland failed to meet its burden of proving that it had offered Mr. Hitchen a suitable job that he could physically perform. The record in this matter provides a reasonable basis for the WCJ to conclude that Mr. Hitchen was never actually offered an objectively defined position due to a miscommunication between the parties. The record herein supports the WCJ's finding that Mr. Hitchen reasonably believed Mr. Wyre's command to clean the restrooms was a joke and not a legitimate job duty. Apparently, the WCJ credited Mr. Hitchen's testimony that he was told to go home without being given any further instructions or explanations. Mr. Hitchen was never given the list detailing his new janitorial duties, nor were these duties clearly communicated to him or understood by him prior to his leaving Southland on the morning of June 18, 2003.
We conclude that the WCJ's factual findings concerning Southland's offer of a suitable job to Mr. Hitchen so as to defeat his claim for supplemental earnings benefits had evidentiary support and was not clearly wrong

CONCLUSION
For the foregoing reasons, the judgment is affirmed. Southland Steel Fabricators, *127 Inc. and Louisiana Workers' Compensation Corporation are cast with all costs of this appeal.
AFFIRMED.
NOTES
[1] Southland and LWCC also appealed from "any allowable court costs of any proceedings until the appeal." However, no such costs are referenced in the judgment appealed from.