993 So.2d 709 (2008)
SUCCESSION OF Louis F. WAGNER.
Succession of Leila Mae Cornay Wagner.
Nos. 2008 CA 0212, 2008 CA 0213.
Court of Appeal of Louisiana, First Circuit.
August 8, 2008.
Rehearing Denied October 22, 2008.
*712 T.J. Seale, III, Patrick K. Reso, Glen Galbraith, Hammond, LA, Charles Schutte, Jr., Baton Rouge, LA, for First Appellant/Appellee, Warren Wagner, Executor of the Succession of Louis F. Wagner.
Margaret H. Kern, Covington, LA, for Second Appellant/Appellee, Faye L. Wagner, Executrix of the Succession of Leila Mae Cornay Wagner.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
GUIDRY, J.
These consolidated appeals arise from the successions of a husband and wife who died approximately nine months apart. The first appellant asserts the trial court erred in annulling a donation of gold coins from the husband to his son and in finding certain funds were donated to the couple's daughter to construct a guest house on her property. The second appellant complains the trial court erred in denying a reimbursement claim for certain community stocks sold by the son and in ordering the wife's estate to pay interest to the husband's estate on community assets in her possession at the time of her death. For the following reasons, we affirm in part, vacate in part, and remand.

FACTS AND PROCEDURAL HISTORY
Louis and Leila Wagner (the Wagners) were married on April 23, 1937, and had two children, Warren and Faye Wagner. Following Louis Wagner's death on May 22, 2001, Warren filed a petition for probate *713 of his father's last will and testament, which named him as universal legatee and executor of his father's estate. While that succession was still under administration, Leila Wagner died on March 3, 2002. Except for a $100,000.00 bequest to a grandson, Leila left her entire estate to Faye. Subsequently, Faye opened her mother's succession with a petition for probate and was appointed as executrix thereof. The two successions were later consolidated, although the consolidation order specifically provided they would continue to be administered separately. Several issues arose in the proceedings regarding the classification of certain properties as being either community or separate in nature and as to the validity of certain donations made by Louis and Leila to one or the other of their children.
Following a hearing on various petitions and motions, the trial court rendered judgment, dated July 12, 2004, declaring a 1999 donation of gold coins by Louis Wagner to Warren to be a nullity based on the court's findings that the coins were community in nature and Leila Wagner did not consent to the donation. Leila Wagner was recognized as the owner of and sent into possession of one-half of the coins. The trial court also denied Warren's claim that his father's succession owned an interest in a guest house constructed on Faye's property, where the Wagners resided for several years before their deaths. The court concluded the funds used to construct the house were donated to Faye by her parents, and further denied Warren's claim for reimbursement for one-half of the money. Warren appealed this judgment, but the appeal was dismissed by this court as being taken from a partial judgment not certified as final. See Succession of Louis F. Wagner, 05-0319, 05-0320 (La. App. 1st Cir.3/24/06), 925 So.2d 773 (unpublished). Further proceedings followed in the trial court, which ultimately rendered judgment on May 31, 2007, disposing of the remaining claims between the parties and homologating the proposed tableau of distribution, as amended by the court. Warren and Faye each filed a separate appeal, which were consolidated by this court.

ASSIGNMENTS OF ERROR
Warren raised the following assignments of error in his appeal:
1. The trial court erred in holding Warren had not acquired ownership of the gold coins through three years good faith possession under just title.
2. The trial court erred in nullifying the donation of gold coins at the request of a succession representative when the right to assert the relative nullity of this donation was personal to Leila Wagner.
3. The trial court erred in concluding a check that was never delivered was a manual gift, as well as in admitting and considering hearsay evidence to establish donative intent as to the funds used to build the guest house on Faye's property.
4. Alternatively, if this court affirms the finding that the funds used to build the guest house were donated to Faye, the trial court erred in not also holding that the donation of the gold coins was valid as a usual and customary gift commensurate with the economic position of the spouses.
In her appeal, Faye raised the following assignments of error:
1. The trial court erred in ordering the Estate of Leila Wagner to pay interest to the estate of Louis Wagner on all community monies in the possession of Leila Wagner at the time of her death, as well as on a $100,000 certificate *714 of deposit donated by Leila Wagner to Faye.
2. Alternatively, if interest was properly awarded, the trial court erred in awarding that interest from the date of Louis Wagner's death, rather than from the date of the judgment homologating the tableau of distribution partitioning the community assets.
3. The trial court was manifestly erroneous in denying the reimbursement claim of the Succession of Leila Wagner for one-half of the value of certain stocks transferred by Louis Wagner to Warren in November 1997, and subsequently sold by Warren.

CONSTRUCTION FUNDS
Warren contends the trial court erred in determining his father's estate was not entitled to one-half ownership of a guest house located on Faye's property based on the court's conclusion that the funds used to build the house were donated to Faye by the Wagners. Specifically, he argues the checks that were given to Faye by his parents to provide funds for the construction were not intended as donations to her.
Louisiana Civil Code article 1539 provides that "[t]he manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality." A check may be the subject of a manual gift.[1]See Terrell v. Terrell, 26,863, pp. 3-4 (La.App. 2d Cir.5/10/95), 655 So.2d 600, 603; Richard v. Richard, 94-1258, p. 4 (La.App. 3d Cir.4/12/95), 653 So.2d 854, 856, writ denied, 95-1206 (La.6/23/95), 656 So.2d 1031; Succession of Browne, 176 So.2d 217, 219 (La.App. 2d Cir.), application denied, 248 La. 365, 178 So.2d 656 (1965). However, the donee of a manual gift must show by strong and convincing proof that the donor had the intent to irrevocably divest himself of the thing and that delivery was made. Biondo v. Biondo, 99-0890, p. 18 (La.App. 1st Cir.7/31/00), 769 So.2d 94, 107. Warren contends Faye failed to prove donative intent in this case.
The pertinent facts are that in 1998 the Wagners sold their home in Metairie and moved into a guest house adjacent to Faye's residence, Louis Wagner lived there until shortly before his death and Leila Wagner lived there for the remainder of her life. It is undisputed that the guest house was located on property owned by Faye. According to Warren, both he and his parents believed Faye would subdivide the property so that the land the guest house was built on would be separate from her property, but this was never done.
It is also undisputed that Faye, who is a licensed contractor, built the guest house with funds provided by the Wagners. A $125,000.00 check the Wagners received from the sale of their former home in Metairie constituted the largest part of these funds. Additional funds were provided by three checks, amounting to $40,000, that the Wagners instructed Warren to write and deliver to Faye in October 1998. Warren admitted he was directed *715 by his parents to deliver these checks to Faye, but maintains they were not gifts, but merely payments to the contractor building the guest house, who just happened to be Faye. Thus, the dispute centers on whether the funds in question were intended as donations to Faye or merely as payments to her as the contractor building the guest house.
At the hearing of this matter, Faye testified her parents gave her the money in question with the understanding that she would use it to build a guest house on her property where they could live. She explained she was very close to her parents, and they wanted to live near her so that she could care for them. She testified her parents never asked her to transfer title to the guest house to them. Warren also testified that he never heard his parents ask Faye to transfer title to them.
In support of her contention that her parents intended to donate the funds to her, Faye offered two documents, Exhibits 3 and 4, into evidence. One was a written statement dictated and signed by her father (Exhibit 3), and the other was a written statement signed by both Mr. and Mrs. Wagner (Exhibit 4). Both documents referred to the $125,000 check given to Faye, as well as to the guest house being built on her property. Warren objected to the introduction of these documents on the grounds they were hearsay and not authenticated. However, upon questioning, he identified Exhibit 3 as a document that was signed by his father and handwritten by Warren himself, at his father's direction, on September 15, 1998. Faye identified Exhibit 4 as a document she wrote out in her parents' presence on May 10, 1998, which they both signed. Based on this testimony, the trial court ruled the documents were properly authenticated and admitted them into evidence over Warren's objection.
In brief, Warren argues the trial court erred in overruling his hearsay objection and admitting the documents because they did not fall within any of the hearsay exceptions. We disagree. "`Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. art. 801 C. Since the documents in question contained statements the Wagners made out-of-court and were offered for the purpose of proving the truth of the statements asserted therein, the documents were clearly hearsay. Generally, hearsay is inadmissible if objected to because its truthfulness cannot properly be tested in the absence of the declarant. However, hearsay may be admitted in some instances if the testimony appears reliable and if there is a minimum of prejudice to the objecting party. See Ratcliff v. Normand, 01-1658, p. 5 (La.App. 3d Cir.6/5/02), 819 So.2d 434, 438.
Louisiana Code of Evidence article 804 B(6) provides that, in a civil case, a hearsay statement may be admitted if the declarant is unavailable and "the court determines that considering all pertinent circumstances in the particular case the statement is trustworthy, and the proponent of the evidence has adduced or made a reasonable effort to adduce all other admissible evidence to establish the fact to which the proffered statement relates...."[2] In the instant case, the declarants *716 clearly were unavailable, because a declarant who has died meets the statutory definition of "unavailability." La. C.E. art. 804 A(4). In overruling Warren's objections, the trial court noted the declarants were deceased and emphasized the fact that the documents were signed by the declarants, a factor it apparently believed weighed in favor of their trustworthiness.
Generally, the trial court is granted broad discretion on its evidentiary rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. Smith v. Smith, 04-2168, p. 14 (La.App. 1st Cir.9/28/05), 923 So.2d 732, 742. In the instant case, we find no error in the trial court's ruling admitting the two documents. First, it is improbable that Faye could have adduced any other admissible evidence to establish her parents' intent, since they were both deceased at the time of the hearing. Moreover, the circumstances surrounding the documents indicate their trustworthiness. The Wagners apparently made the statements in order to clarify their intent regarding several transactions in which they gave money to their children. At the time of the statements, no suits had been filed or litigation threatened as to these transactions. Nor has any other reason or ulterior motive been suggested as to why the Wagners would distort the truth as to their intent. The fact that the documents were signed by the declarants is a factor strongly indicating their reliability and trustworthiness, particularly in the case of Exhibit 4, which was signed by both Mr. and Mrs. Wagner. Another factor suggesting their trustworthiness is the fact that, although given at different times to different people, the two statements are basically consistent on matters on which they both touch.
Thus, considering that the totality of the circumstances supports a finding of their reliability and trustworthiness, we find no error in the admission of the two documents. See Ratcliff, 01-1658 at p. 6, 819 So.2d at 439; United Investors Life Insurance Company v. Alexander, 27,466, p. 9 (La.App. 2d Cir.11/1/95), 662 So.2d 831, 836. Having concluded the trial court properly admitted the documents into evidence, we now consider whether those documents support the court's conclusion that the Wagners possessed donative intent when they gave the funds in question to Faye.
Donative intent is a factual issue subject to the manifest error standard of review. See Montet v. Lyles, 93-1724, p. 4 (La.App. 1st Cir.6/24/94), 638 So.2d 727, *717 730, writ denied, 94-1985 (La.11/18/94), 646 So.2d 377; Rose v. Johnson, 06-518, p. 4 (La.App. 3d Cir.9/27/06), 940 So.2d 181, 184, writ denied, 06-2528 (La.12/15/06), 944 So.2d 1273. Thus, a trial court's finding on this issue cannot be reversed unless an appellate court, after review of the entire record, finds both that no reasonable factual basis exists for the finding and that it is manifestly erroneous or clearly wrong. See Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Moreover, in applying this standard, a trial court's credibility determinations are entitled to great deference. See Hebert v. Rapides Parish Police Jury, 06-2001, p. 3 (La.1/16/08), 974 So.2d 635, 654 (on rehearing).
With respect to Exhibit 3, Warren explained that he paraphrased what his father dictated to him, so that the wording was his rather than his father's. However, he admitted that he read the document to his father once, possibly twice, before his father signed it. This document provides as follows:
from Louis F. Wagner
To my son Warren, it is my wish to give you the money to pay off the loan on your house.
Thinking that your mom and I have just sold or somewhat given our home on Nursery Ave to Chad [Faye's son], at Faye's request, and were glad to be able to do it, I feel that its value is probably $175,000- to $200,000-. As you know Faye offered to pay $150,000, however I said no make it $125,000. Therefore I think of this as a gift to Chad of $50,000 thousand + dollars.
In addition to that I gave the check for $125,000 to Faye who is building a home on her property for us to live in for the remainder of our time. It will be better to be closer to both of you.
This has gotten longer than I though[sic], however I feel that mom and I have just given Faye and Chad almost $200,000. Therefore I want to give you $60,000 to help you get into the clear. $10,000 from mom and I to each of you Mike [Warren's son], Gayle [Warren's wife] and you Warren, $20,000 each.

P.S. This is in Warren's handwriting and at my request because of the amount of this gift. (Emphasis added.)
The second document (Exhibit 4) is a joint statement signed by both Louis and Leila. It provides as follows:
Agreement between our daughter Faye Wagner and Mr. & Mrs. Louis F. Wagner. We sell our 801 Nursery Ave Home to our grandson Chad Nunez for $125,000.00 and we give that check to Faye Wagner and pay the difference to construct a home on her property on Three River Rd  17239 which will remain her property. We give her the home and we can live in the home on her property. This will include all ... decorating, appliances, window coverings and money in expenses. ... (Emphasis added.)
In the instant case, the trial court concluded these two documents supported Faye's claim that her parents intended to donate the construction funds to her. Although Warren insisted the checks were merely payments made to Faye as the building contractor, the court found "the evidence and testimony presented by Faye Wagner to be more credible on this issue." Consequently, the court denied Warren's claim on behalf of his father's estate for either a one-half ownership interest in the guest house or reimbursement for funds used in its construction.
Based on our review of the record, we conclude a reasonable factual basis existed for the trial court's finding of donative *718 intent. In the signed statement he had Warren write for him (Exhibit 3), Louis Wagner explained the reason he wanted he and his wife to give Warren and his family monetary gifts totaling $60,000 (to pay off the mortgage on their house) was because he had recently given the $125,000 check to Faye. This reasoning makes sense only if the $125,000 check was a gift to Faye.
Furthermore, the joint statement (Exhibit 4) signed by the Wagners indicates that while they provided the funds for its construction, they expected to have no ownership interest in the guest house. If the checks were merely given to Faye as payments to their building contractor, as Warren maintains, the Wagners logically would have expected to have an ownership interest in and title to the guest house. However, both Faye and Warren testified that the Wagners never requested in their presence that title of the property be put in their names. Therefore, considering the totality of the circumstances, we cannot say the trial court was clearly wrong or manifestly erroneous in its determination that Faye demonstrated by strong and convincing evidence that the Wagners possessed donative intent when they gave her the funds to construct the guest house.
Nevertheless, noting that a manual gift requires both delivery and donative intent, Warren further argues there was not a valid manual donation of the $125,000 check, because there was no testimony suggesting Louis or Leila Wagner delivered the check to Faye. This assertion is specious, since it is contradicted by Warren's own testimony. Warren was questioned at the April 2004 hearing as to whether his father intended to give the $125,000 check to Faye. Even though he insisted it was not a gift, he responded that his father "gave her the check to build the house."
Likewise, Warren's additional argument that there was no valid donation of the three checks he wrote and delivered to Faye because he was not authorized to make donations on his parents' behalf is equally without merit. Although delivery is essential for a manual gift, it is not required that the donor personally deliver the object to the donee. See Richard, 94-1258 at p. 4, 653 So.2d at 856. The fact that Warren was the person who wrote and delivered the checks does not mean he was the person making the donation. Warren was authorized to write checks on his parents' checking account. Moreover, he admitted they specifically instructed him to prepare and deliver the checks to Faye. Thus, he clearly acted as their agent within the scope of the authority they granted him. The determinative issue is that his parents had donative intent when they instructed him to give Faye the checks. Thus, the donations were valid since both delivery and donative intent were established by strong and convincing evidence.

GOLD COINS
By authentic act dated August 27, 1999, Louis Wagner donated to his son, Warren, certain gold coins having a value at that time of approximately $450,000.00. The coins were purchased by Louis Wagner, at Warren's suggestion, in 1997 and 1998. According to Warren's testimony, his father told him he purchased the coins with his separate funds. Nevertheless, he concealed the donation from his wife and asked Warren to do the same. Warren admitted that he complied with his father's request.
Louisiana Civil Code article 2349 provides that, except for usual and customary gifts, "[t]he donation of community property to a third person requires the concurrence of the spouses ...." Additionally, *719 La. C.C. art. 2353 provides that, when the concurrence of a spouse is required by law, as in the case of true donations, the alienation of community property by one spouse without the consent of the other is relatively null, unless the other spouse has renounced his right to concur. See Wilkerson v. Wilkerson, 42,324, pp. 13-14 (La. App. 2d Cir.8/15/07), 962 So.2d 1137, 1145; Ackel v. Ackel, 595 So.2d 739, 743 (La.App. 5th Cir.1992); 16 Louisiana Civil Law Treatise, Matrimonial Regimes, § 5.15, 404 (3d ed.2007). In this case, it is undisputed that Leila Wagner did not consent to the donation of the gold coins. Nor was there any evidence that she had renounced her right to concur in transactions alienating community property.
At the time of Louis Wagner's death in May 2001, Leila Wagner was neither aware of the donation of the gold coins to Warren, nor had consented to it. Thereafter, on July 18, 2001, she filed a petition in the Succession of Louis F. Wagner captioned "Petition for Partition, For Return of Community Assets, and For Other Relief." She made the following allegations in Paragraph V of this petition:
Upon information and belief, petitioner represents that prior to the death of Louis Frank Wagner, the decedent was persuaded by his son and now succession representative herein, Warren Wagner, to transfer ownership of community assets, without the knowledge or consent of petitioner. Petitioner represents that certain community assets were transferred to an improperly formed limited liability company, as well as to Warren Wagner individually, to the great detriment of petitioner. (Emphasis added.)
Subsequently, on October 3, 2001, after learning through discovery proceedings of the donation of the gold coins,[3] she filed an amended petition designated "Petition for Possession, For Return of Community Assets, And for Other Relief." In the amended petition, she specifically asserted the gold coins were community property and requested that cause be shown why she should not be sent into immediate possession of one-half of the community assets, including the gold coins.
A hearing was held on this matter in April 2004. Warren admitted therein that both he and his father concealed the donation of the coins from his mother. However, he indicated that although he knew the coins were purchased during his parents' marriage, his father told him they were purchased with his separate funds. He noted that he knew his father had separate funds derived from an earlier inheritance from his brother. He further pointed out that in the gift tax return his father filed in connection with the donation, his father indicated the coins were separate property. However, when questioned by opposing counsel, Warren conceded that at least one of the checks used to pay for the coins may have been written on a community checking account, although he continued to maintain his father put the funds into that account. On his father's instructions, Warren personally wrote the check drawn on that account, which was listed in *720 the name of "Mr. Or Mrs. Louis F. Wagner."
Following the hearing, the trial court rendered judgment declaring the donation of the coins to be a nullity. In reaching its decision, the trial court concluded the coins were purchased with community funds and were, therefore, community in nature. The court noted that while Warren claimed his father's separate funds were used to purchase the coins, no evidence was presented establishing this claim. Accordingly, the donation of these community assets without the consent of Leila Wagner was declared null, and the Estate of Leila Wagner[4] was recognized as owner of one-half of the coins. The trial court also rejected Warren's claim that he had acquired ownership of the coins by acquisitive prescription,
On appeal, Warren does not challenge the classification of the coins as community property. Rather, he argues the trial court erred in allowing Faye, as his mother's succession representative, to challenge the validity of the donation of the coins, since that right was strictly personal to his mother. In November 2003, Faye had filed, as her mother's succession representative, a petition to annul the donation. Warren argues that because his mother did not personally file suit to annul the donation after becoming aware of it, Faye could not do so on her behalf.
In support of this claim, Warren relies on Wisner v. City of New Orleans, 169 La. 1127, 126 So. 681 (1930), in which the Supreme Court held that the nullity arising under law due to the fact that a husband donated community property without the concurrence of his wife is a relative nullity that can be invoked only by the wife. Accord Milano v. Milano, 243 So.2d 876, 880 (La.App. 1st Cir.1971). The Supreme Court based its holding on the fact that the relative nullity of the donation is founded, not on public order, but on a private right affecting the interest of the non-consenting spouse only. Wisner, 126 So. at 684. Thus, Warren argues that since Leila Wagner never filed suit to annul the donation of the coins, no other person, including her succession representative, had the right to assert the relative nullity of the donation, a right that was strictly personal to her.
The trial court rejected Warren's arguments, concluding that the original and amended petitions filed by Leila Wagner in the succession proceedings "evidence[d] her intent to oppose any erstwhile donation by Louis Wagner to their son of community property." The designated title of the amended petition was "Petition for Possession, For Return of Community Assets, And for Other Relief." In this petition, Leila Wagner unequivocally asserted the gold coins were community property. Further, she specifically requested a show cause as to why she should not be sent into immediate possession of certain designated community assets, including the gold coins. Moreover, Leila Wagner filed this petition after she became aware that the coins had been donated to Warren.
To arrive at the truth and avoid miscarriages of justice, harsh, technical rules of pleading are not favored. See La. C.C.P. art. 854; Winford v. Conerly Corporation, 04-1278, p. 11 (La.3/11/05), 897 So.2d 560, 567. Moreover, a party may be granted any relief that he is entitled to under the pleadings, and courts should construe pleadings in such a manner as to achieve substantial justice. La. C.C.P. arts. 862, 865. Bearing these principles in mind, we agree with the trial court that the petitions filed by Leila Wagner constituted *721 a challenge to the validity of the donation of the coins and clearly evidenced that she did not concur in the donation. Accordingly, we find no error in the trial court's conclusion that Leila Wager personally asserted the nullity of the donation.
In the alternative, Warren argues that despite the fact that his mother did not consent to the donation of the coins, the donation was nonetheless valid under the usual or customary gift exception provided by La. C.C. art. 2349. As previously noted, article 2349 provides that a true donation of community property to a third party generally requires the consent of both spouses. However, the article further provides that one spouse acting alone can make a "usual or customary gift of a value commensurate with the economic position of the spouses at the time of the donation." La. C.C. art. 2349. Under those circumstances, a donation of community property may be valid, even without the concurrence of both spouses. See La. C.C. art. 2349; 16 Louisiana Civil Law Treatise, Matrimonial Regimes, § 5.14, 401 (3d ed.2007).
Warren asserts that should this court uphold the donation of the construction funds to Faye, the size of this donation would establish it was usual and customary for the Wagners to make large donations to their children. He further contends the donation of the coins was commensurate with the Wagners' economic positions at the time of the donation, since the detailed descriptive list indicated they had over four million dollars in community assets, even without including the coins. Accordingly, he argues the donation of the coins falls within the usual and customary gift exception provided by article 2349.
We find this argument lacks merit. Even though the record reflects the Wagners did in fact regularly give large monetary gifts to their children and grand-children, those gifts were more typically in the range of $10,000.00 to $20,000.00. While the record does establish several gifts that were substantially larger, none of them even approach the approximately $450,000.00 value of the gold coins. Other than the donation of the coins, the largest gift either parent acting alone gave to one of the children was a $100,000.00 certificate of deposit that Leila Wagner gave to Faye. However, Leila Wagner admitted in her amended petition that the certificate of deposit was a community asset for which she must account to Louis Wagner's estate. In effect, she conceded her gift to Faye was not a valid donation of her husband's interest in this community asset, suggesting such large gifts by the Wagners were not usual and customary.
With respect to the donation of the construction funds, we first note that unlike the donation of the gold coins, it was not a purely gratuitous donation. A purely gratuitous donation is one "made without condition and merely from liberality...." La. C.C. art. 1523. In this case, the Wagners donated the money to Faye with the understanding that she would use it to construct a guest house on her property where they could live the rest of their lives. Moreover, the Wagners did live in the house for several years prior to their deaths.
Secondly, even if the donation of $165,000.00 to Faye for the construction of the guest house had been purely gratuitous, it still does not support Warren's position. The donation of the construction funds was agreed to by both parents, so that it actually constituted a donation of only $82,500.00 from each parent. In contrast, the gold coins were worth approximately $450,000.00, and were donated to Warren by his father acting alone. Thus, the record does not support Warren's contention *722 that a donation of this size was a usual and customary gift.
Finally, Warren also maintains he acquired ownership of the gold coins by three-year acquisitive prescription. Under La. C.C. art. 3490, title to movables may be acquired through prescription of three years by a good-faith possessor. To establish three-year acquisitive prescription under article 3490, one must establish: (1) possession as owner for three years; (2) in good faith; (3) under an act sufficient to transfer ownership; and (4) without interruption. The party asserting acquisitive prescription has the burden of proving all facts essential to support it. Moreover, mere physical possession is insufficient. McKee v. Hayward, 97-0553, p. 3 (La.App. 1st Cir.4/8/98), 710 So.2d 362, 365, writ denied, 98-1784 (La.10/9/98), 726 So.2d 407.
Warren relies on the authentic act of donation executed by his father to satisfy the requirement of an act sufficient to transfer ownership. He further asserts the good faith requirement was met because he in good faith believed the coins were his father's separate property, since his father said they were purchased with separate funds and listed them as separate property on the gift tax return he filed in connection with the donation. Warren maintains his belief was reasonable since he knew his father had separate assets, having previously inherited a substantial amount of property from his brother. Finally, he contends he has also met the requirement of three years possession, since he has been in continuous possession of the gold coins since the donation occurred in 1999.
In denying Warren's claim of acquisitive prescription, it is clear the trial court concluded the essential element of good faith was absent. The court noted in particular that Warren and his father "actively concealed" the donation of these community assets from Leila Wagner. The court was of the opinion that a fraud had been committed against her regarding the coins and stated that it would not allow "the co-conspirator [Warren] to benefit from his concealment."
A trial court's determination of whether a person acted in good faith is a factual finding which cannot be disturbed in the absence of manifest error. See Authement v. Larpenter, 97-0579, 97-0580, p. 5 (La.App. 1st Cir.5/15/98), 713 So.2d 712, 715, writ denied, 98-1628 (La.9/18/98), 724 So.2d 763. Under the manifest error standard of review, a district court's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the court of appeal is convinced that had it been the trier-of-fact, it would have weighed the evidence differently. Driscoll v. Stucker, 04-0589, pp. 17-18 (La.1/19/05), 893 So.2d 32, 46. As the trier-of-fact, a trial court is charged with assessing the credibility of witnesses and, in so doing, is free to accept or reject, in whole or in part, the testimony of any witness. See Pelican Point Operations, L.L.C. v. Carroll Childers Company, 00-2770, pp. 7-8 (La.App. 1st Cir.2/15/02), 807 So.2d 1171, 1176, writ denied, 02-0782 (La.5/10/02), 816 So.2d 293. When factual findings are based upon determinations regarding the credibility of witnesses, the manifest error standard demands that great deference be accorded to the trier-of-fact's findings. Hitchen v. Southland Steel, 05-1708, p. 5 (La.App. 1st Cir.6/9/06), 938 So.2d 123, 126.
In the instant case, the trial court rejected Warren's testimony that he in good faith believed the coins were purchased with his father's separate funds. The court's determination is supported by the fact that while purportedly asserting *723 the coins were his separate property, Louis Wagner nevertheless asked Warren not to reveal the donation to his mother. Warren complied with this request and concealed the donation from his mother. Even after his father's death, Warren failed to disclose the donation of the coins until he was compelled to do so by discovery requests in these proceedings. Moreover, since he personally wrote the check, Warren was well aware that at least some of the coins were paid for by a check drawn on a community checking account. In light of these circumstances, we find no manifest error in the trial court's conclusion that Warren lacked good faith. Since good faith is an essential element for acquisitive prescription under article 3490, he failed to establish ownership of the coins by three years acquisitive prescription.

STOCK SALE
In her appeal, Faye contends the trial court erred in denying the reimbursement claim asserted on behalf of her mother's estate for one-half of the value of certain stock shares sold by Warren.
The evidence reveals that in November 1997, Louis Wagner transferred a large number of stock shares to Warren, which were then sold for $149,580.00 through Warren's personal brokerage account. Warren acknowledged both that he did not own the stock and that his father did not intend to give it to him. He explained the stock was sold through his account for convenience only, since his father did not have a brokerage account at that time. He testified he did not keep the money, but gave his father a check for the full amount of the sale proceeds. On cross-examination, he admitted he had not brought to court either a copy of the check or any statement showing the deposit of the check into one of his father's accounts. At that point, his attorney requested that the court hold the matter open so that those items could be introduced into evidence, but the court refused stating, "We are trying to get this over with."
The trial court denied Faye's reimbursement claim, specifically accepting Warren's testimony that he paid his father the proceeds from the stock sale. Faye now argues on appeal that the district court's credibility determination was not reasonable and that without "concrete, documentary evidence," the trial court could not have reasonably concluded Warren paid the sale proceeds to his father.
The trial court's finding that Warren paid the sale proceeds to his father is a factual determination based on the court's evaluation of Warren's credibility. As such, it is subject to the manifest error-clearly wrong standard of review. Hebert, 06-2001 at p. 2, 974 So.2d at 654. Accordingly, we must determine whether the trial court's finding was reasonable in light of the record reviewed in its entirety. If so, this court may not reverse, even if convinced that had it been sitting as the trier-of-fact, it would have weighed the evidence differently. Hebert, 06-2001 at pp. 2-3, 974 So.2d at 653-54. Moreover, a trial court is free to accept or reject, in whole or in part, the testimony of any witness. Pelican, 00-2770 at pp. 7-8, 807 So.2d at 1176.
Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. Adams v. Rhodia, Inc., 07-2110, p. 10 (La.5/21/08), 983 So.2d 798, 806. Further, when the court's findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the findings of fact. However, where documents or objective evidence so contradict the witness's story, or the story itself is so *724 internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness's story, a reviewing court may well find manifest error even in a finding purportedly based upon a credibility determination. Where such factors are not present, however, and a factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Hebert, 06-2001 at p. 3, 974 So.2d at 654.
In the instant case, the trial court accepted Warren's testimony that he paid the sale proceeds to his father as credible. Even though no documentary evidence was presented in support of this testimony, the trial court was free to accept it based on its credibility evaluation. The testimony was neither internally inconsistent nor contradicted by objective evidence. Considering the great deference accorded to a trial court's factual determinations based on credibility, we cannot say the trial court was manifestly erroneous or clearly wrong in accepting the testimony in question. Thus, we find no error in the denial of the reimbursement claim as to the stock sale proceeds.

INTEREST
Faye also assigns error to that portion of the judgment ordering the estate of Leila Wagner to pay interest to the estate of Louis Wagner on all community monies in the possession of Leila Wagner at the time of her death, as well as on a $100,000.00 certificate of deposit Leila Wagner donated to Faye. However, we do not reach the merits of her arguments, because our review of the judgment reveals the portion of the judgment complained of is fatally flawed and must be vacated.
A judgment is the determination of the rights of the parties in an action. La. C.C.P. art. 1841. Although the form and wording of judgments are not sacramental, Louisiana courts require that a judgment be precise, definite, and certain. Laird v. St. Tammany Parish Safe Harbor, 02-0045, p. 3 (La.App. 1st Cir.12/20/02), 836 So.2d 364, 365; see also Vanderbrook v. Coachmen Industries, Inc., 01-0809, p. 11 (La.App. 1st Cir.5/10/02), 818 So.2d 906, 913. Further, the amount of the recovery awarded by a judgment must be stated in the judgment with certainty and precision. The amount must be determinable from the judgment itself, without reference to an extrinsic source, so that a third person could determine from the judgment the amount owed without reference to other documents. See Vanderbrook, 01-0809 at pp. 11-12, 818 So.2d at 913-14.
In the instant case, the portion of the judgment awarding interest provides as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that interest is due by the estate of Leila Mae Cornay Wagner to the estate of Louis Wagner on all community monies in her possession at the time of her death, from the date of the death of Louis Wagner through the partition of the remaining succession assets in the amount of ½ of the interest payable on those community assets. Interest shall be due at the rate of interest at which the monies were invested at the time of Leila Wagner's death. The estate of Louis Wagner is also due interest on its½ interest in the $100,000 CD, a community asset in the possession of Faye Wagner.
The judgment fails to state the precise rate at which interest is to be paid. Rather, it merely states that Leila Wagner's estate owes one-half of the "interest payable" *725 on the community assets "at the rate of interest at which the monies were invested at the time of [her] death." Thus, it is impossible to determine the exact rate at which interest is payable by perusal of the judgment itself, without resort to extrinsic sources. Further, with respect to the award of interest on the certificate of deposit, the judgment fails to specifically set forth either the rate or the period of time for which interest is payable.
Accordingly, since the interest award is uncertain and indefinite, that portion of the judgment is not proper and must be vacated. See Vanderbrook, 01-0809 at p. 12, 818 So.2d at 914. However, rather than vacate the entire judgment, we vacate only the portion of the judgment rendering it uncertain and indefinite, i.e., the interest award. See Clark v. Diamond B. Construction, 00-2146, p. 5 (La.App. 1st Cir.12/28/01), 803 So.2d 1113, 1117; Security National Partners, Limited Partnership v. Baxley, 37,747, pp. 9-10 (La.App. 2d Cir.10/29/03), 859 So.2d 890, 896; McCall v. Henry, 539 So.2d 819, 820 (La. App. 3d Cir. 1989). This matter is remanded to the trial court for the limited purpose of the trial court entering a judgment setting forth the interest awarded with certainty and precision.

CONCLUSION
For the reasons assigned, that portion of the judgment ordering the Estate of Leila Wagner to pay interest to the Estate of Louis Wagner is vacated and set aside. The judgment of the trial court is affirmed in all other respects. This matter is remanded to the trial court for further proceedings consistent with this opinion.
The costs of the present consolidated appeals are to be shared equally by the two appellants. The assessment of the costs of the earlier appeal in this matter, i.e., Succession of Louis F. Wagner, 05-0319, 05-0320 (La.App. 1st Cir.3/24/06), 925 So.2d 773 (unpublished), was held in abeyance pending final disposition of this matter. The costs of that appeal are to be paid by the appellant therein, Warren Wagner.
AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
NOTES
[1] The donation inter vivos of checks is effective without any formality beyond the negotiation of same. See La. R.S. 10:3-201 et seq.; Succession of Jackson, 537 So.2d 736, 740 n. 6 (La.App. 1st Cir.1988), writ denied, 541 So.2d 857 (La.1989). However, while Louisiana's law of Commercial Paper controls as to the requisite form, the substantive codal provisions relative to the validity of donations inter vivos remain applicable. Succession of Jackson, 537 So.2d at 740 n. 6; Succession of Jones, 505 So.2d 841, 844-45 (La.App. 2d Cir. 1987). Thus, the donor must still prove donative intent. Succession of Jackson, 537 So.2d at 740 n. 6.
[2] Louisiana Code of Evidence article 804 B(6) also requires the party offering the statement to give the adverse party sufficient advance notice of his intention to offer the statement to allow the adverse party a fair opportunity to prepare to meet it. It further provides that, if the giving of such notice was not practicable or the failure to give it was excusable, the court may allow a late notice to be given, in which case the opposing party is entitled to a recess, continuance, or other relief sufficient to allow them to meet the evidence. In the instance case, the record does not indicate whether such notice was given. Nevertheless, Warren did not object to the admission of the documents on the basis of lack of notice. The specific grounds for an objection must be brought to the attention of the trial court. La. C.E. art. 103 A(1); Jeansonne v. Bosworth, 601 So.2d 739, 744 (La.App. 1st Cir. 1992), writ not considered, 614 So.2d 75 (La. 1993). The reason for this rule is so that the trial court has an opportunity to make the proper ruling, and to give, not only the court, but also the opponent the chance to meet or cure the grounds for the objection if he can do so. Jeansonne, 601 So.2d at 744. In any event, even if Warren did not receive the notice required by La. C.E. art. 804 B(6), we do not believe any prejudice resulted. Copies of both of the documents were provided to Warren as attachments to a memorandum in support of a rule for mandamus previously filed by Faye. Additionally, at the deposition he gave in July 2003, Warren was questioned about Exhibit 3 by opposing counsel. Moreover, Warren can hardly claim to have been unaware of the contents of this document or unprepared to meet it, since he personally wrote it at his father's direction. Thus, Warren was well aware of the existence of the two documents, their contents, and the fact that Faye was relying on them to establish donative intent.
[3] Warren argued at various times that Leila Wagner did not become aware of the donation of the coins to him until his deposition was taken on November 16, 2001, which was over a month after she filed the amended petition. However, in a reply memorandum filed by his attorney on June 2, 2004, it was acknowledged that this assertion was factually incorrect. In the memorandum, Warren's attorney admitted that a review of documents revealed that Leila Wagner "was apparently aware of that donation several weeks before [Warren's deposition] (at the least, two or three weeks before the Amended Petition was filed on October 3, 2001)."
[4] Leila Wagner died in March 2002, during the pendency of the proceedings.