944 So.2d 615 (2006)
Herman WARREN
v.
ACTION OIL RECOVERY.
No. 2005 CA 1755.
Court of Appeal of Louisiana, First Circuit.
September 20, 2006.
*616 Michelle M. Sorrells, Baton Rouge, Counsel for Plaintiff/Appellee Herman Warren.
John J. Rabalais, Laurie W. Maschek, Covington, Counsel for Defendant/Appellant Action Oil Recovery, Inc.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
GUIDRY, J.
An employer appeals a decision of the Office of Workers' Compensation Administration awarding indemnity benefits after previously finding that an employee's claim for benefits had not prescribed by virtue of the "developmental injury rule." Having carefully reviewed the evidence in this matter, we affirm.

FACTS AND PROCEDURAL HISTORY
On December 23, 2002, Herman Warren filed a disputed claim for compensation (Form 1008) with the Office of Workers' Compensation Administration, seeking wage benefits, penalties, and attorney fees against his employer, Action Oil Recovery, Inc. (Action Oil). In his claim, Mr. Warren asserted that he had injured his back in March 2001, while engaged in the course and scope of his employment. Mr. Warren later amended his claim to add Louisiana Commerce and Trade Association Self Insurers Fund (LCTA) as a defendant in the claim. Action Oil and LCTA denied liability for payment of the claimed benefits, penalties, and attorney fees, and further asserted several defenses to the claim. Thereafter, Action Oil filed a motion for summary judgment wherein it excepted to Mr. Warren's claim by raising the objection of prescription. Mr. Warren filed a cross motion for summary judgment seeking a declaration that his claim was not prescribed.
A trial on the cross motions for summary judgment was held, and the workers' compensation judge (WCJ) found that Mr. Warren's claim for indemnity benefits was not prescribed. Action Oil filed applications for supervisory writs with this court[1] *617 and the Louisiana Supreme Court,[2] which were denied, and the matter proceeded to trial. At the trial on the merits, the WCJ refused to reconsider Action Oil's defense that Mr. Warren's claim was untimely and rendered judgment awarding Mr. Warren temporary, total disability benefits, but denied his request for penalties and attorney fees. Action Oil filed a motion to suspensively appeal the judgment signed by the WCJ on December 13, 2004.

ASSIGNMENTS OF ERROR
On appeal, Action Oil alleges that the WCJ erred as a matter of fact in finding that Mr. Warren's claim was subject to the developing injury rule under La. R.S. 23:1209, and as a matter of law in finding that his claim, filed nearly twenty-one months after the date of injury, was not prescribed. Mr. Warren has answered the appeal seeking reversal of that portion of the judgment that denied him an award of penalties and attorney fees[3] and Mr. Warren further requests an award of additional attorney fees for work performed by counsel in responding to this appeal.

DISCUSSION
It is a well-settled principle that the provisions of the workers' compensation scheme should be liberally interpreted in favor of the worker. Bynum v. Capital City Press, Inc., 95-1395, pp. 5-6 (La.7/2/96), 676 So.2d 582, 586. Despite this principle, Action Oil contends that Mr. Warren's injury was not a developing injury to which the extended time limits of La. R.S. 23:1209 A would apply. We disagree.
The pertinent language of La. R.S. 23:1209 A provides:
In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter. . . . Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident. [Footnote omitted].
Our courts have consistently interpreted "the time the injury develops" to mean "development of disability, and disability marks the time from which it is clear that the employee is no longer able to perform the duties of his employment in a satisfactory manner." Swearingen v. Air Products & Chemical, Inc., 481 So.2d 122, 124 (La.1986). The underlying rationale for this interpretation is that an injured employee who continues to work, despite a work-related medical condition, which is painful but not then disabling, should not be penalized for attempting to remain in the work force in order to support his or her family or in the hope that the condition will improve. See Sevin v. Schwegmann Giant Supermarkets, Inc., 94-1859, p. 5 (La.4/10/95), 652 So.2d 1323, 1326, citing Wex A. Malone & H. Alston Johnson III, 14 Louisiana Civil Law Treatise-Workers' Compensation § 384 (3d ed.1994). Thus, it has been consistently held that an employee *618 who suffers a work-related injury that immediately manifests itself, but only later develops into a disability, has a viable cause of action until one year from the development of the disability, rather than from the first appearance of symptoms or from the first date of treatment. Winford v. Conerly Corporation, 04-1278, p. 5 (La.3/11/05), 897 So.2d 560, 564.
In March 2001,[4] Mr. Warren injured his back as he attempted to keep a drum full of used oil filters from falling off a dolly that he was using to transport the drum to his work vehicle. He immediately felt a sharp pain in his lower back and waited for about thirty minutes for the pain to ease before he completed his work and went home for the day. No one witnessed the incident. Believing he had just pulled a muscle in his back, Mr. Warren did not report the incident to his employer nor did he seek medical attention; instead, he used a heating pad, took baths in his whirlpool bathtub, and used pain medication to help alleviate the pain. After a few weeks when the pain did not resolve, but instead grew worse and began radiating into his buttocks and right leg, Mr. Warren finally reported the incident to his employer and was advised to seek medical attention.
Dr. Alan C. Farries, an orthopedist, initially saw Mr. Warren in June 2001, and had him begin a conservative course of treatment of pain medication and physical therapy. When Mr. Warren's pain symptoms did not abate, Dr. Farries ordered a magnetic resonance imaging (MRI) scan of Mr. Warren's back, following which Dr. Farries discussed treatment options with Mr. Warren that included "doing nothing, getting more physical therapy, ESI's [epidural steroid injections] or maybe seeing a neurosurgeon." Mr. Warren elected to try additional physical therapy, and when that proved to be unfruitful, he tried the epidural steroid injections, also to no avail. In a March 18, 2002 medical note, Dr. Farries stated, "[a]t this time he states he cannot afford to quit working. He wonders whether if he took off some time and just received physical therapy would this be of any benefit. I suspect not." Having exhausted the treatment options offered, Dr. Farries referred Mr. Warren to Dr. Fraser E. Landreneau, a neurosurgeon.
Dr. Landreneau began treating Mr. Warren in April 2002. In an August 26, 2002 medical note, Dr. Landreneau mentioned that Mr. Warren had not had a myleogram CT scan performed, although one was ordered, and noted "I would have a myelogram prior to any surgical consideration which [is] highly possible." A myelogram was performed on Mr. Warren, and upon reviewing the results, Dr. Landreneau found that Mr. Warren "has a severe stenosis that is debilitating and he is further non-functioning until this matter is addressed." Dr. Landreneau then ordered Mr. Warren to stop working as of November 20, 2002, and on April 10, 2003, Dr. Landreneau performed decompression surgery on Mr. Warren's back.
Up until the day Dr. Landreneau ordered him to stop working, Mr. Warren continued to perform his full job duties and only missed a few, isolated days of work (when he received epidural steroid injections) between the date of his injury and November 20, 2002. Mr. Warren filed his claim for indemnity benefits on December *619 23, 2002one month after Dr. Landreneau had ordered him to stop working, but within two years of the date of his injury in March 2001.
Despite this chronology of Mr. Warren's medical treatment and work status, Action Oil nevertheless asserts that it is the date Mr. Warren became aware of the significance of his injury, citing Otis v. LSUMC Police Department, 02-0673 (La.App. 4th Cir.10/9/02), 828 So.2d 712, that determines when time began to toll on his claim. We find no merit in this argument as the language quoted is taken out of context. When the language is read in the context of the paragraph from which it is taken (and also considered in the context of the original opinion from which the language is quoted in the Otis case), it is clear that what is meant by an employee becoming aware of the significance of his injury is the employee's awareness of his disability or inability to continue working. In Holcomb v. Bossier City Police Department, 27,095 (La.App. 2nd Cir.8/25/95), 660 So.2d 199, the case from which the language in Otis is quoted, the court held "[i]t was not until he was diagnosed with a herniated disc that it became clear to Holcomb that he was disabled and unable to work." Holcomb, 27,095 at p. 5, 660 So.2d at 203. Even in the Otis case, the court found that under the "developing injury rule," the claimant's right to file his claim prescribed one year from the date he quit working, as that was the date the claimant "was no longer able to perform his duties of his employment in a satisfactory manner." Otis, 02-0673 at p. 4, 828 So.2d at 715.
As shown by the medical evidence in the record before us, although Mr. Warren's physical condition did not change between the date the MRI was performed and the date the myelogram was performed, his ability to endure the pain, sufficiently enough to satisfactorily perform his job duties, was steadily declining. Moreover, it was only after Dr. Landreneau reviewed the myelogram results and confirmed that surgical intervention was necessary that he finally deemed Mr. Warren's condition to be such that he should not continue to push himself to perform his normal job duties and ordered him to stop working. Prior to that time, even when Mr. Warren specifically questioned Dr. Farries about whether it would be beneficial for him to stop working for a while (because his work activity seemed to aggravate his condition and diminish the effects of the medical treatment he received), Dr. Farries advised that it would not be beneficial. Thus, it is clear from the record before us that although Mr. Warren may have been fully aware of the extent of his injury or physical condition as early as October 2001, when Dr. Farries discussed the results of the MRI scan with him and his treatment options, it is equally clear that he only became aware of or realized that the significance of his condition was such that he could no longer perform his job duties when Dr. Landreneau ordered him to stop working on November 20, 2002.
As observed by this court in Boudreaux v. Angelo Iafrate Construction, 02-0992, p. 5 (La.App. 1st Cir.2/14/03), 848 So.2d 3, 7:
In the case of the retained employee who continues to work with symptoms which might have been held to be disabling (if litigated), but which did not become manifestly disabling to the employee until he was physically forced to quit his work, the disability does not become manifest or "develop" until that date, because to select an earlier date would be dealing in conjecture.
Accordingly, we find no error in the WCJ's determination that Mr. Warren's injury developed into a disability on November 20, 2002, the date he was ordered to stop *620 working by Dr. Landreneau, and that his claim for indemnity benefits filed one month later was timely.
In light of Mr. Warren's abandonment of the sole assignment of error raised in his answer to the appeal and the absence of an allegation that Action Oil's appeal was frivolous, we conclude that Mr. Warren's request for an award of attorney fees for the work performed by his counsel in litigating this appeal lacks merit.

CONCLUSION
Accordingly, we find no error in the ruling of the WCJ on the issue of prescription, and we affirm the judgment of the WCJ. All costs of this appeal are assessed to Action Oil Recovery, Inc.
AFFIRMED.
McCLENDON, J., agrees and assigns additional reasons.
McCLENDON, J., agrees, and assigns additional reasons.
I respectfully agree with the reasoning of the opinion. It is undisputed that Mr. Warren continued to work in pain. In addition, I note in particular Mr. Warren's responses when asked to rate his pain, on a scale from one to ten, with ten being the worst, at various times from the date of the injury in March of 2001 until the date he was finally disabled from work, November 20, 2002. At six months after the injury, he rated the pain as being a seven or eight, but he kept working. It increased over time, and by November 19, 2002, he rated it as a ten, and unbearable. At that time, he realized that he could no longer work.
NOTES
[1] Warren v. Action Oil Recovery, 03-2296 (La. App. 1st Cir.12/31/03) (unpublished writ action).
[2] Warren v. Action Oil Recovery, 04-0306 (La.3/26/04), 871 So.2d 356.
[3] Since Mr. Warren failed to brief this assignment of error, we consider such assignment as having been abandoned. See Uniform Rules, Courts of Appeal, Rule 2-12.4.
[4] There is some discrepancy in the record as to the exact date of injury. At trial, Mr. Warren testified that he sustained his injury on March 26, 2001, but in a pre-trial deposition, he declared the date of injury to be March 22, 2001. On his claim form, Mr. Warren simply stated that his work-related accident occurred in March 2001. The parties eventually stipulated that the accident occurred on March 22, 2001.