WHIPPLE, C.J.
2This matter is before us on appeal by defendanVemployer, Weyerhaeuser Holden Wood Products, from a judgment of the Office of Workers’ Compensation (“OWC”) in favor of elaimant/employee, Reginald Crockerham. For the reasons that follow, we affirm in part, vacate in part, and remand with instructions.
FACTUAL AND PROCEDURAL BACKGROUND
Claimant was employed by defendant for approximately eighteen years, primarily in the position of forklift operator. On November 25,2013, claimant filed a disputed claim for compensation contending that he suffered a lower back injury caused by driving a forklift with bad tires and a broken seat. According to claimant, in 2012 and 2013, every time he would hit a.pothole or hit the lift side to side while operating the forklift, it would “jar” his lower back and send a sharp shooting pain down his right side to his big toe. He contends that this “ongoing process” of enduring these incidents caused his preexisting degenerative' condition to worsen, resulting in his lower lumbar back injuries. After conservative treatment in the form of multiple lumbar epidural steroid injections, claimant eventually underwent a discecto-my and a two-level fusion at L4-L5 and L5-S1 on October 10, 2013.
The matter was tried before the OWC on October 12, 2015, with the parties stipulating to all issues except, primarily, whether claimant suffered a work-related accident within the course and scope of his employment with defendant.[1] Following the filing of post-trial memoranda, the OWC rendered judgment on December 18, 2015, finding that claimant proved by a preponderance of the evidence that he suffered multiple accidents beginning in 2012, which arose out of and occurred during the course of his employment with defendant, and that, as a ^result of these accidents, claimant suffered injury to his lumbar spine. The OWC awarded claimant tempo *536 rary total disability (TTD) benefits from April 2, 2013, and continuing forward, in the amount of $394.13 per week, plus legal interest; granted defendant a credit in the amount of $8,442.34 against the amount owed for TTD benefits; and awarded claimant past and future medical expenses incurred for the,lumbar spine, with interest.-
The judgment of the OWC was accompanied by written reasons for judgment, also issued on December 18, 2015. After hearing from the witnesses and considering the documentary evidence presented, the OWC issued the following findings:
The accident(s) at issue occurred when claimant was operating “forklift number One” that had “bad tires” and a “broken seat”. These two problems of that particular forklift combined with the potholes, which remained' despite claimant’s reporting to supervisors, caused excessive jarring of claimant’s body which resulted in repeated accidents to claimant’s-lumbar spine. Despite claimant’s notifications to his supervisors about these accidents, nothing was done to correct these problems and no reports were written despite claimant’s reporting, which began in 2012.
These problems of “bad tires”, “broken seat” and “pot holes” do not compromise job activities that cause a “gradual deterioration or progressive degeneration of the body” under La. R.S. 23:1021 which defines an accident. These problems were not corrected by the employer and they continued to cause accidents to claimant. Employer’s failure to recognize or acknowledge these accidents does not diminish the facts.
Claimant cannot read or write. His wife of many years testified at trial that it is she that handles all of the managerial aspects of the family. This includes almost, if not all, of medical questionnaires, etc. that claimant had to. fill out during this long process of seeking medical treatment. Claimant’s wife is a special education teacher in the Tangipahoa Parish school system.
When claimant initially sought medical treatment for his lumbar spine, he was told that he had arthritis. There was no recognition that claimant was suffering these work-related accidents and claimant’s limited educational abilities did not help clarify this to the initial physicians. Claimant’s limited mental skills should be taken into account when the facts of this case are considered. He is not being given any ^advantage but the circumstances of the reporting, forms filled out, discussions as to the events by and involving claimant were considered with his mental limitations being a part of the equation when determinihg what actually happened.
Claimant last worked for defendant on April 1, 2013 when his injuries from the repeating accidents finally resulted in his inability to perform his work duties. On April 1, 2013, claimant’s injuries had “developed” into a disability that rendered his work status as Temporarily Totally Disabled.
Defendant now appeals from the judgment of the OWC contending that the OWC erred in: (1) disregarding and/or misinterpreting applicable .statutes and controlling precedent so as to find that multiple unspecified accidents in 2012 and 2013 developed into a work-i’elhted injury, when claimant’s claim failed to meet the statutory definitions of “accident” or “developing injury,” and when the claim was otherwise excluded as an occupational disease; (2) finding claimant’s limited mental skills allowed the disregard of unrefuted evidence showing the absence of any accident; (3) denying defendant’s exception of prescription; and (4) awarding unspecified *537 past medical expenses and future medical expenses not yet incurred.
DISCUSSION
Assignment of Error Number One
In its first assignment of error, defendant contends that the OWC erred in finding that claimant suffered “repeated accidents,” as defined by LSA-R.S. 23:1021, and that his injuries were not attributable to degenerative disc disease, which defendant contends is specifically excluded as an occupational disease pursuant to LSA-R.S. 23:1031.1.
A workers’ compensation claimant bears the initial burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. Magee v. Abek, Inc., 2004-2554 (La.App. 1st Cir. 4/28/06), 934 So.2d 800, 806, writ denied, 2006-1876 (La. 10/27/06), 939 So.2d 1287. “Accident”'is defined in LSA-R.S. 23:1021(1) as “an unexpected or unforeseen factual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” "Whether a claimant has carried his or her burden of proof and whether testimony is credible are questions of fact to be determined by the trier of fact. Allman v. Washington Parish Police Jury, 2004-0600 (La.App. 1st Cir. 3/24/05), 907 So.2d 86, 88.
Factual findings in a workers’ compensation case are subject to the manifest error-clearly wrong standard of review. McCray v. Delta Industries, Inc., 2000-1694 (La.App. 1st Cir. 9/28/01), 809 So.2d 265, 269. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La. 7/1/97), 696 So.2d 551, 556. For an appellate court to reverse a workers’ compensation judge’s factual finding,, it must find from the record that a reasonable factual basis does not exist for the finding of the workers’ compensation judge and that the record establishes that the finding is clearly wrong. Dawson v. Terrebonne General Medical Center, 2010-2130 (La.App. 1st Cir. 5/19/11), 69 So.3d 622, 626.
However, the interpretation of statutes pertaining to workers’ compensation is a question of law and warrants a de novo review to determine if the ruling was legally correct. Lirette v. Patterson Services, Inc., 2005-2654 (La.App. 1st Cir. 11/17/06), 951 So.2d 223, 226. Thus, we review de novo the OWC’s statutory interpretation, while using the manifest error standard.of review for the OWC’s factual findings regarding application of the statute. See Harrelson v. Arcadia, 2010-1647 (La.App. 1st Cir. 6/10/11), 68 So.3d 663, 666, writ denied, 2011-1531 (La. 10/7/11), 71 So.3d 316.
^Defendant contends that claimant’s surgery was necessitated herein by degenerative disc disease in his lower back and not as a result of an “accident” as defined by LSA-R.S. 23:1021. Defendant further contends that while LSA-R.S. 23:1031.1 provides that an employee shall be entitled to workers’ compensation benefits for an occupational disease due to causes and conditions characteristic of a particular occupation, “degenerative disc disease” is specifically excluded from the classification of an occupational disease.[2] Thus, de *538 fendant submits that because claimant’s injuries resulted from degenerative disc disease, claimant is not entitled to the benefits granted by the OWC for maladies that are non-compensable under the statutory scheme.
Claimant counters that the statutory law and jurisprudence do not require claimant to be able to identify the exact time, place, and location of the accident, and produce medical evidence showing that the incident produced an exact change in claimant’s condition immediately following the complained of accident, as such a burden would be impossible for most workers sustaining compensable injuries to meet. Claimant further contends that although he had experienced back pain in the ten years prior to 2012, that pain or “stiffness” always resolved. Beginning in 2012, however, claimant contends that he suffered injuries in several precipitous events, which directly caused pain that was different in nature and severity than pains previously experienced, for which he sought medical attention and reported 17to defendant. Moreover, claimant contends that strict adherence is an affront to the intended purpose of workers’ compensation law. We agree.
It is a well-settled principle that the provisions of the worker’s compensation scheme are to be liberally interpreted in favor of the worker. Scott v. Wal-Mart Stores, Inc., 2003-0858 (La.App. 1st Cir. 2/23/04), 873 So.2d 664, 668, citing Bynum v. Capital City Press, Inc., 95-1395 (La. 7/2/96), 676 So.2d 582, 586 (La. 1996). While a claimant must show that his employment somehow caused or contributed to the disability in order for the employee to recover, he need not establish the exact cause. Elswick v. Highway Transport, 96-0014 (La.App. 1st Cir. 9/27/96), 680 So.2d 1364, 1367. Moreover, claimant’s own testimony accepted by the trier of fact may be sufficient to prove causation by a preponderance of evidence, provided: (1) no other evidence discredits or casts serious doubt upon the claimant’s version of the incident, and (2) the claimant’s testimony is corroborated by circumstances surrounding the alleged incident. Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La. 1992).
In the instant case, claimant testified that he had “stiffness” in his back for ten years before the Fall of 2012 and Spring of 2013, but it had always gotten better and he was able to go back to work and perform his job. He explained that, beginning in September of 2012, however, “[e]very time [he] would hit a hole or hit the lift side to side, it would jar [his] lower back and send pain down [his] right side to [his] big toe.” Claimant took photographs of the tires on the forklift to show his wife why he was hurting so much and why he could not get out of bed in 18the morning.[3] *539 He also testified that he reported the problems with the forklift and resulting pain he was experiencing to his supervisor, Joe Hart. Claimant testified that he “would complain ... [a]nd after [he] complained, they’d tell [him], okay, they was going to take care of it.” Claimant stated that he would then continue to do “the best [he] can ... [to] try to do it as safe as [he] can if possible to keep going.” Claimant testified that over the last six-month period that he worked for defendant, this happened “a number of times.” He explained:
It happened with the tires. The lift would be going from side to side. It really rolled rough and then hitting the holes as well. It just—the sharp pains. Every time it would hit, the pain would shoot down my lower back down to my big toe on the right side. Mostly on— mostly the right.
When asked if this was a long, ongoing process where the pain gradually increased month by month, or day by day, or year by year, claimant answered:
The pain would occur when I hit something, a hole. And that’s when the sharp pain would hit me in the lower back, go down the right side to my toe. And that’s when I would—that’s when I would report it.
When asked whether claimant had an accident or a particular incident on a certain date, he explained:
It just—when I hit a hole or hit something and with the bad tires on the lift, with the lift going side to side, it made it bad. And when I hit a hole, it made it worse. A sharp pain would hit me in the lower back and go down to my toe. That’s when I would report it.
Moreover, claimant specifically testified reporting these incidents, which caused sharp pain in his lower back, to Supervisor Hart, as well as Human Resources Manager Charles Beene and Superintendent Leo Primm in a meeting on | ¡March 28, 2013. Claimant testified that they were required to report any injuries and that he specifically reported that when the forklift hit the holes, it would jar his back causing sharp pain in the middle part of his back down his right side to his big toe. Claimant testified that he would bring it up in the meetings to keep anyone else from having the same problem and also so that they could fix or take care of the problem.
Claimant’s testimony clearly indicates that these specific incidents worsened his condition at a specific identifiable moment and that this was not a gradual deterioration or progressive degeneration. Although defendant contends that claimant’s increase in pain is solely related to his preexisting degenerative disc disease, the OWC found that the problems with the “forklifty combined with the potholes, which remained despite claimant’s reporting to supervisors, caused excessive jarring of claimant’s body[,] which resulted in repeated accidents to claimant’s lumbar spine.”
Following an exhaustive review of the record and exhibits in this matter, which support the reasonable findings of the *540 OWC, we are unable to say the OWC erred in determining that claimant sustained a work-related accident as defined by LSA-R.S. 23:1021. In rendering its decision, the OWC clearly found the testimony of claimant and his wife regarding the nature and onset of the pain, as well as the incidents causing his back pain, to be credible. This type of credibility determination is not to be second-guessed at the appellate level. See Pitre v. Buddy’s Seafood, 2011-0175 (La.App. 1st Cir. 8/16/12), 102 So.3d 815, 821, writ denied, 2012-2058 (La. 11/16/12), 102 So.3d 41. Accordingly, we find no merit to this assignment of error.
Assignment of Error Number Two
Defendant contends in its second assignment of error that the OWC erred in considering claimant’s limited mental skills in considering the facts of this case | inabsent any testimony, medical evidence, or employment records reflecting claimant’s “purported” illiteracy or diminished mental capacity. Defendant'contends that the OWC used this determination to disregard claimant’s medical records, which show the denial of any accident and that do not reflect any report of an on-the-job accident, and his reporting of an accident that made no mention of bad tires, broken seat, potholes or excessive jarring.
Claimant 'testified at trial that he possessed a ninth-grade education level and that he was not able to read or write very well. Claimant further testified that his wife, Sheila, handled all of the family business and that she filled out his disputed form for compensation and other forms required by his health insurer, Blue Cross Blue Shield, by asking him the questions, and then recording his answers. Sheila Crockerham testified at trial and' concurred with claimant’s testimony.
While defendant contends on appeal that the OWC erred in considering these limitations where “[tjhere is no testimony, medical evidence or employment records reflecting [claimant’s] purported illiteracy or diminished mental capacity,” we note that claimant’s testimony at trial regarding his literacy, including his ability to read, write, comprehend or communicate, was not challenged or refuted by defendant in any respect at trial. Specifically, defendant presented no evidence whatsoever at trial to contradict claimant’s testimony, or that of his wife, concerning his level of education and degree of literacy.
The OWC was able to observe claimant’s testimony and demeanor at trial. Based on these observations, the OWC found that “[claimant’s limited mental skills should be taken into account when the' facts of this case are considered.” The OWC further determined that because of these limited mental skills, “[w]hen claimant initially sought medical treatment for his lumbar spine, he was told that he had arthritis ... [and that] [t]here was no recognition that claimant was suffering |nthese work-related accidents and claimant’s limited educational abilities did not help clarify this to the initial physicians.”
It is well settled jurisprudentially that the trier of fact, actually hearing and observing witnesses give live testimony, is in a better position to evaluate credibility than a reviewing court on the intermediate level, which at best can only study the written words of a cold record. Armstrong v. Fireman’s Fund Insurance Company, 558 So.2d 646, 649-650 (La. App. 1st Cir. 2/21/90), writ denied, 560 So.2d 30 (La. 1990). Moreover, where, as here, a court’s findings are based on credibility determinations, this court has emphasized the importance of deferring to the trier of fact’s findings, as the trier.of fact is not disadvantaged by the review of a cold record, and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. Purvis v. Grant Parish *541 School Board, 2013-1424. (La. 2/14/14), 144 So.3d 922, 927.
The OWC’s conclusion that claimant'had limited mental • skills was established at trial. Moreover, we find no error in the OWC’s conclusion that these limitations should be taken into account in considering the facts of this case, given the uncontra-dicted evidence in the record. Considering the jurisprudence set forth above, on review, we decline to disturb the OWC’s finding. This assignment of error lacks merit.
Assignment of Error Number Three
In this assignment of error, defendant contends that in the event that the OWC’s finding that claimant incurred an “accident” pursuant to LSA-R.S 23:1021(1) is upheld, the OWC erred in denying its peremptory exception raising the objection of prescription.
In denying the defendant’s exception of prescription, the OWC noted:
Claimant last worked for defendant on April 1, 2013 when his injuries from the repeating accidents finally resulted in his inability to perform his work duties. On April 1, 2013, claimant’s injuries had [^“developed” into a disability that rendered his work status as Temporarily Totally Disabled.
If evidence is introduced at the hearing on the peremptory exception raising the objection of prescription, the district court’s findings of fact are reviewed under the manifest error or clearly wrong standard of review. TIG Insurance Company v. Louisiana Workers’ Compensation Corporation, 2009-0330 (La.App. 1st Cir. 9/11/09), 22 So.3d 981, 983. Louisiana Revised Statute 23:1209 governs prescriptive periods for workers’ compensation claims, and provides, in pertinent part:[4]
A. (1) In case of personal injury, including death resulting therefrom,- all claims for payments shall be forever .barred unless within one year after the accident or death the parties- have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter.
(2) Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4).
(3) When the injury does not result at the time of or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within three years from the date of the accident.
(4) However, in all cases described in Paragraph (3) of this Subsection, where the .proceedings have begun after two years from the date of the work accident but within three years from the date of the work accident, the employee may be entitled to temporary total disability benefits for a period not to exceed six *542 months and the payment of such temporary total disability benefits in accordance with liathis Paragraph only shall not operate to toll or interrupt prescription as to any other benefit as provided in R.S. 23:1221.
As set forth above, LSA-R.S. 23:1209(A)(3) provides that an injury not resulting at the time of, or developing immediately after, the accident is a “developing injury.” Pitre v. Buddy’s Seafood, 102 So.3d at 822. Our courts have consistently interpreted “the time the injury develops,” as set forth in LSA-R.S. 23:1209(A), to mean “development of disability, and disability marks the time from which it is clear that the employee is no longer able to perform the duties of his employment in a satisfactory manner.” Warren v. Action Oil Recovery, 2005-1755 (La.App. 1st Cir. 9/20/06), 944 So.2d 615, 617. As the Louisiana Supreme Court explained in Sevin v. Schwegmann Giant Supermarkets, Inc., 94-1859 (La. 4/10/95), 652 So.2d 1323, 1325-1326:
Workers’ compensation laws are to be liberally interpreted in favor of protecting workers from the economic burden of work-related injuries. In furthering that policy, this court has construed La. Rev.Stat. 23:1209 A’s term “the time the injury develops” liberally in cases in which the worker attempts to continue working until no longer able to perform his or her employment duties. This court has consistently held that an employee who suffers a work-related injury that immediately manifests itself, but only later develops into a disability, has a viable cause of action until one year from the development of the disabling injury, rather than from the first appearance of symptoms or from the first date of treatment. The “time the injury develops,” as interpreted to mean the date the disability develops, is usually determined as the time when it becomes clear that the worker can no longer perform his or her employment duties in a satisfactory manner. Thus, the “developing injury” rule has been applied not only when the injury does not manifest itself immediately, but also when the employee, after an accident in which injury is immediately apparent, continues to attempt employment duties until he or she is finally disabled from doing so.
[[Image here]]
Requiring any injured employee, who is not yet disabled, to assert his or her claim within one year of the accident (or one year of the last payment of benefits) in order to preserve the cause of action would encourage needless litigation. [Citations omitted.]
| uThe underlying rationale for this interpretation is that an injured employee who continues to work, despite a work-related medical condition, which is painful but not then disabling, should not be penalized for attempting to remain in the work force in order to support his or her family or in the hope that the condition will improve. Warren v. Action Oil Recovery, 944 So.2d at 617, citing Sevin v. Schwegmann Giant Supermarkets, Inc., 652 So.2d at 1326, citing Wex A. Malone & H. Alston Johnson III, 14 Louisiana Civil Law Treatise-Workers’ Compensation § 384 (3d ed. 1994). Thus, it has been consistently held that an employee who suffers a work-related injury that immediately manifests itself, but only later develops into a disability, has a viable cause of action until one year from the development of the disability, rather than from the first appearance of symptoms or from the first date of treatment. Warren v. Action Oil Recovery, 944 So.2d at 618, citing Winford v. Conerly Corporation, 2004-1278 (La. 3/11/05), 897 So.2d 560, 564.
Defendant herein contends that if claimant suffered an “accident,” his claim would *543 have arisen as early as 2009, when the forklift number four with transmission problems was purchased by defendant, or in June of 2011, when claimant’s medical records indicate that he began reporting back pain, rather than in April of 2013, when he became disabled and was no longer able to continue working. Defendant contends that the prescriptive period for an accidental injury was one year from the date of the accident, or, applying the pre-amended version of LSA-R.S. 23:1209, two years from the date of the accident if it qualified as a “developing injury,” and thus, that his claim had therefore prescribed at the time he filed his disputed form for compensation on January 21, 2014. We disagree.
The OWC herein found that claimant suffered “repeated accidents,” and that injuries sustained from the repeated accidents finally resulted in his inability to perform his work duties, such that, on April 1, 2013, claimant’s injuries had | ^“developed” into a disability that rendered his work status as temporarily totally disabled. Thus, applying the jurisprudence set forth above, claimant’s disputed form for compensation filed on January 21, 2014, within one year of the manifestation of claimant’s disability on April 1, 2013, was timely. We find no error in the OWC’s denial of claimant’s peremptory exception raising the objection of prescription.
This assignment of error lacks merit.
Assignment of Error Number Four
In its final assignment of error, defendant contends that the judgment is improper in that it fails to clearly identify the relief granted, inasmuch as some of the sums awarded are not specified. Moreover, defendant contends that the judgment awarded claimant future medical treatment, thereby improperly granting claimant medical expenses that have not yet been incurred. Defendant challenges the following portions of the judgment as improper:
B. Claimant is awarded:
1. All medical bills and expenses not paid by his general health insurer Blue Cross Blue Shield; and
[[Image here]]
3. All out of pocket medical expenses incurred for the lumbar spine which are part of the evidence admitted at trial for the period April 1, 2014 through date of trial; and
[[Image here]]
5. Continued medical treatment pursuant to the La. Medical Treatment Guidelines^]
Although the form and wording of judgments is not sacramental, judgments must be precise, definite and certain, and the amount of recovery should be determinable from the judgment without reference to an extrinsic source. See Vanderbrook v. Coachmen Industries, Inc., 2001-0809 (La.App. 1st Cir. 5/10/02), 818 So.2d 906, 913. Moreover, a final appeal-able judgment must contain decretal | ^language, and it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. Jenkins v. Recovery Technology Investors, 2002-1788 (La.App. 1st Cir. 6/27/03), 858 So.2d 598, 600.
The judgment provides that claimant is awarded “[a]ll medical bills and expenses not paid by his general health insurer Blue Cross Blue Shield” but fails to set forth an amount for same. The judgment further awards claimant “[a]ll out of pocket medical expenses incurred for the lumbar spine which are part of the evidence admitted at trial for the period April 1, 2014 through date of trial” but also fails to provide an amount for same, and instead, indicates *544 that the medical expenses incurred may be discerned from the evidence admitted at trial.[5]
Accordingly, because these awards are uncertain and indefinite and must be determined by referencing extrinsic sources, those portions of the judgment are not proper and must be vacated. See Succession of Wagner, 2008-0212, 2008-0212 (La. App. 1st Cir. 8/8/08), 993 So.2d 709, 724. However, rather than vacate the entire judgment, we vacate only the portion of the judgment rendering it uncertain and indefinite, he., (1) the award of all medical bills and expenses not paid by his general health insurer Blue Cross Blue Shield; and (2) the award of all out. of pocket medical expenses incurred for the lumbar spine, which are part of the; evidence admitted at trial for the period April 1, 2014, through, date of trial. See Succession of Wagner, 993 So.2d at 725, citing Clark v. Diamond B. Construction, 2000-2146 (La. App. 1st Cir. 12/28/01), 803 So.2d 1113, 1117.[6]
| ^Accordingly, this matter is remanded to the OWC for the limited purpose of allowing the OWC to enter a judgment setting; forth the particular amount of the award for all medical bills and expenses not paid by his general health insurer-Blue Cross Blue Shield and the award of all out-of-pocket medical expenses incurred for the lumbar spine, which are part of the evidence admitted at trial, for the period of April 1, 2014, through date of--trial, with certainty and precision. .
Finally, the judgment awarded claimant continued medical treatment pursuant to the Louisiana Medical Treatment' Guidelines. To the extent that defendant attempts to characterize this award as one for future medical expenses, we disagree and note that this award in no way prohibits defendant from challenging any requested future treatment as beyond the scope of the Louisiana-Medical Treatment Guidelines.
CONCLUSION
For the above and foregoing reasons, the December 18, 2015 judgment of the OWC is affirmed in part, vacated in part, and remanded with instructions. Costs of' *545 this appeal are assessed to the defen-dantyappellant, Weyerhaeuser Holden Wood Products.
AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
Pettigrew, J. concurs
Holdridge, J. dissents with reasons
McClendon, J. dissents and assigns reasons.

. At the conclusion of trial, defendant filed an exception of prescription, which the OWC subsequently denied.

. Louisiana Revised Statute 23:1031.1 provides, in part:
*538 A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.

. Claimant testified that the forklifts that he operated were numbers one and four. He stated that he operated forklift number one *539 for three or four years and that he operated forklift number four for "[q]uite sometime.” Claimant complained that forklift number one had worn tires and a seat with no back support. The original seat pad had ripped, and the new seat that was installed did not have the same back support that the original seat had. Claimant stated that there were about five different areas in the planning mill that had potholes. He explained that when he operated forklift number four, which had transmission problems, he would get the same sharp pain in his lower back and down his right leg. Claimant testified that after operating forklift one and four, he was so "stiff” he could hardly get out of the forklift at the end of his shift.

. Louisiana Revised Statute 23:1209(A)(3) was amended and reenacted to extend the time limitation for reporting developmental injuries from two years after the accident to three-years frpm the date of the accident, and LSA-R.S. 23:1209(A)(4) was enacted to provide that the employee is entitled to temporary total disability benefits for up to six months in all cases described in Paragraph (3), by La, Acts 2012, No. 783, § 1, effective August 1, 2012.

. While the judgment contains a stipulation by the parties that the amount of claimant’s out-of-pócket medical expenses from March 27, 2013 through' March 31, 2014 was $3,243.73, the judgment provides no stipulated amount for expenses from April 1, 2014, through the date of trial.

. In vacating only the uncertain and indefinite portion of the judgment, we note that another panel of this court recently handed . down an- unpublished opinion, which dismissed the entire appeal for lack of jurisdiction where a portion of the judgment concerning interest and penalties was not definite and certain. See Duet v. Landry, 2016-0575 (La. App. 1st Cir. 3/6/17)(unpublished opinion). In . doing so, the court relied in part on Succession of Wagner, 993 So.2d 709 at 724, and Vanderbrook v. Coachmen Industries. Inc., 818 So.2d at 913, which are also cited herein. In those cases, however, like the instant case, this court elected to vacate only the uncertain and indefinite portion of the judgment and concluded that the remaining portions of the judgment were properly reviewable. (In Van-derbrook, this court affirmed the grant of summary judgment as to the finding of liability, reversed the grant of summary judgment as to the "Lemon Law” claims and damages, and remanded to the trial court for a determination of the "exact amount of damages," which were undeterminable-from the judgment, Vanderbrook v. Coachmen Industries, Inc., 818 So.2d at 913-914. In Súccession of Wagner, this court vacated the portion of the judgment awarding interest, which was uncertain and indefinite, and affirmed the judgment in all other respects, noting, "rather than vacate the entire judgment, we vacate only the portion of the judgment rendering it uncertain and indefinite, Le., the interest award.”, Succession of Wagner, 993 So.2d 709 at 724, citing Clark v. Diamond B. Construction, 803 So.2d at 1117.)